Argued December 14, 1939; affirmed January 23, 1940

## TUTHILL *v.* STOEHR ET AL.
(98 P. (2d) 8)

In Banc.

*Garner G. Talboy*, of Portland (Earl S. Nelson, of Portland, on the brief), for appellants Talboy and Bjorkman.

*James H. Ganoe*, of Portland (J. H. Stockman and Orville T. Boyle, both of Portland, on the brief), for respondent.

ROSSMAN, J. This is an appeal by Garner G. Talboy and Erik Bjorkman, two of the five defendants, from a decree of the circuit court which grants judgment upon a promissory note payable to the plaintiff, and foreclose a real estate mortgage delivered to him as mortgagee to secure payment of the note. Both instruments were signed by the defendant Emily S. Stoehr. The decree grants judgment against her, Bjorkman, and T. E. and Clara A. Hammersly, all of them being defendants. It found that Bjorkman and the Hammerslys had assumed payment of the mortgage debt. The fifth defendant, Talboy, was a grantee in a deed which described the mortgaged property but did not impose payment of the mortgage debt upon him. No relief was granted against him except an adjudication that his interest in the property was subject to the mortgage lien.

May 12, 1912, Emily S. Stoehr signed the note and mortgage above mentioned. The note promised payment of $1500 to the plaintiff May 8, 1915. The mortgage mentioned as the property encumbered Lot 16, Block 8,

Waverleigh Heights, a subdivision of Portland, and was recorded June 18, 1912. October 1, 1828, Mrs. Stoehr (a widow) conveyed the property to Alma R. Thacker by a deed which mentioned the mortgage and stated: "* * * which said mortgage grantee herein assumes and agrees to pay as part of the purchase price with interest thereon from October 1, 1928." The deed was recorded October 20, 1928. Mrs. Thacker became Mrs. Pier. November 12, 1932, the Piers conveyed this property to Mary E. Dorsett by a deed which after describing the mortgage said: "* * * which grantee assumes and agrees to pay * * *." The deed was recorded January 10, 1933. January 9, 1933, Mrs. Dorsett and her husband conveyed the lot to the Hammerslys by a deed which in addition to mentioning the mortgage stated: "* * * which grantee assumes and agrees to pay * * *. Grantee also assumes and agrees to pay interest on said mortgage of $1500 at the rate of seven (7%) per cent per annum." That deed was recorded January 10, 1933. October 25, 1933, the Hammerslys by written contract agreed to exchange this item of property for a three-acre tract owned by the appellant Bjorkman. The mention of plaintiff's mortgage in the contract is the following:

"$1500. 3 yr. Straight mtg and app. $45. back taxes and $32. Interest Mtg bearing 6%."

The contract bound Bjorkman to assume the indebtedness and the Hammerslys to pay the delinquent taxes which encumbered the acreage.

November 1, 1933, the Hammerslys executed a deed conveying title to the lot. At Bjorkman's request it named the American Construction Company the capital stock of which he owned as grantee. The deed recited that the property was subject to a "mortgage in

the amount of $1500 bearing six% interest, in favor of H. S. Tuthill, and approximately $103 Taxes and interest," but did not impose payment of the indebtedness upon the grantee. The deed was not delivered to the corporation. The following circumstances account for the nondelivery. One I. O. Holman, a real estate broker, had represented Bjorkman in the negotiations with the Hammerslys and for these services charged $75. Bjorkman was not ready to pay the commission when the deed was handed to him and, pursuant to agreement, it was left with W. W. Graves, an attorney, to be returned to Bjorkman upon payment of $75. The sum was never paid and Graves still held the deed at the time of the trial. Bjorkman, when asked for "the reason for the nonpayment of commission in that deal," replied, "When we signed up the contract, it called for a 50 by 100 lot and I discovered later on it was only 40 by 100 and I wanted some adjustment on it." The contract did not describe the property as a lot, but as "residence located at 2820 Franklin St., Portland, Oregon." Although the mortgage described the property as "Lot numbered sixteen (16) in Block numbered eight (8) * * *," a part, 24 by 25 feet in size, occupied by a garage, had been conveyed to someone else.

The above is Bjorkman's complete explanation of his omission to pay the commission and obtain the deed. He said nothing more upon the subject. He does not claim that he ever mentioned the matter to the Hammerslys. The deed signed by the Hammerslys and left with Graves excepted from the conveyance the 24 by 25 foot parcel. Although Bjorkman never obtained this deed Talboy obtained from the Hammerslys not merely one conveyance of the property, but in fact two, each

naming himself as the grantee. We shall now state the circumstances.

Talboy had represented the American Construction Company in the collection of a judgment in its favor against a debtor. When he undertook the services it was agreed that he should have one-half of whatever was recovered. Upon execution sale the debtor's property was sold and the sheriff's certificate was issued in Talboy's name. This property later became the tract mentioned in the Hammerslys-Bjorkman contract. When this tract was traded for the lot with which we are now concerned Talboy felt that he became a half owner in the lot. January 29, 1934, he obtained from the Hammerslys a quitclaim deed which conveyed the property to him. Talboy's explanation of this circumstance follows: "I contacted the Hammerslys and explained to them that the deed previously given to the American Construction Company couldn't be obtained. I don't know that I went into detail and told them why, but explained that it would be necessary to secure another deed." Continuing, he swore that when he requested the deed the Hammerslys referred him to Mr. Hammersly's brother, an attorney, and that the latter told him that if Bjorkman would write a letter requesting that title be conveyed to Talboy a deed would then be executed. Talboy testified that the letter was signed and that he then obtained the deed. About two weeks later he obtained a second deed which named him as grantee. This deed was bargain and sale in form and, unlike the first, excepted from the conveyance the 24 by 25 foot area. Talboy explained the execution of the second deed by saying that the first had failed to mention the excepted area. Apparently, he recognized that the contract did not require the conveyance of the en-

tire lot. As witnesses, the Hammerslys indicated that at the time of the execution of these two deeds nothing was said to them that the first deed (which named the corporation as grantee) had been left with Graves and that he still possessed it. Apparently the Hammerslys were confused concerning the two later deeds and regarded the two as copies of one another. However, these circumstances, in our opinion, are not of material consequence in this cause. Talboy admitted that when he prepared the two deeds, which named him as grantee, he knew of the plaintiff's note and mortgage. Referring to Bjorkman, he said, "He told me there was a mortgage against it." The bargain-and-sale deed, being the one which excepted the 24 by 25 foot area, was recorded. Talboy did not contradict witnesses who testified that he was present when the deed, later left with Graves, was discussed and delivered to Bjorkman.

Nothing has ever been paid upon the principal of the mortgage debt. Interest payments, however, were faithfully maintained to and including August 21, 1933. Nothing was paid upon the tax obligations after the year 1929.

The above, we believe, is a fair review of the evidence. It is true that it leaves much in a state of uncertainty concerning the defendants' contentions, but so does the evidence itself. The trial judge, after making several inquiries during the course of the trial for the commendable purpose of ascertaining the nature of the defense, finally said, "I am involved in a cloud of uncertainty as to what you people claim."

We shall now mention the pleadings briefly. The complaint is in customary form. From the answer of the two appellants we quote:

468

"Answering Paragraphs VII, VIII and IX, these defendants admit that the conveyances therein described from Emily S. Stoehr to Alma R. Thacker, from Alma N. Pier, formerly Alma R. Thacker, and S. C. Pier, her husband, to Mary E. Dorsett and from Mary E. Dorsett and Charles M. Dorsett, husband and wife, to T. R. Hammersly and Clara A. Hammersly, his wife, were recorded as alleged * * *.

"Admit that T. E. Hammersly and Clara A. Hammersly, his wife, did on or about the 25th day of October, 1933, enter into an agreement to sell said premises to defendant Bjorkman, * * *.

" * * * these defendants allege the only notice to defendant Garner G. Talboy concerning the matters therein described was that imparted by the records of deeds and mortgages of Multnomah County, Oregon."

The appellants argue that (1) a mortgagee's rights under an assumption agreement are derivative and therefore no greater than the promisee's; (2) an assumption agreement induced by fraud or mistake confers no rights upon the mortgagee; (3) an assumption agreement must be based upon consideration; (4) an assumption agreement must clearly import an intention to assume the mortgage debt; (5) if the transaction out of which the assumption agreement arose was an exchange of equities rather than a sale, no presumption of consideration is warranted; (6) the eventual deed rather than the contract should be resorted to for the purpose of ascertaining the intent of the parties; (7) an agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was to be incurred, is not personally liable. We mention these propositions as a whole because appellants' brief so treats them.

■ Without pausing to determine whether these propositions are in accord with the law, we express the

belief that the evidence shows that they have no application to this case. For instance, § 1-610, Oregon Code 1930, requires the answer to contain "a statement of any new matter constituting a defense * * *." Fraud in the inducement or in the treaty is an affirmative defense and must be pleaded: *Palmer-Haworth Logging Co. v. Henderson*, 90 Or. 192, 174 P. 531; *Gleason v. Denson*, 65 Or. 199, 132 P. 530. The same is true of mistake: 49 C. J., Pleading, p. 294, § 361, and Bancroft's Code Pleading, § 321. Accordingly, if the appellants believed that Bjorkman was induced by fraud or was misled by mistake to sign the contract containing the assumption clause, the defense should have been alleged. Not having been pleaded, it is not now available. Notwithstanding that neither fraud nor mistake was pleaded, we examined all of the evidence which could possibly have indicated the presence of either fraud or mistake, but are firmly satisfied that the record does not indicate the presence of either. The contention that the agreement to assume payment of the mortgage debt lacked consideration likewise was not pleaded. The written contract was under seal and expresses a consideration. In actions upon instruments under seal and others which express a consideration the defense of want of consideration is new matter which must be pleaded: Pomeroy's Code Remedies (5th ed.) § 585; Bancroft's Code Pleading, § 286. Moreover, the suggestion that a consideration is absent is refuted by the written contract itself which over Bjorkman's signature says, "In payment of the purchase price of the above-described property, the second party agrees (a) to assume the above-mentioned encumbrances of $1500 Mtg and $45 taxes & $32 interest." Another part of the contract, after expressly mentioning the mortgage, says, "* * *

which encumbrances are included in the purchase price of $10. and val. consideration.'' Thus, we see that Bjorkman's promise to pay the mortgage debt was part of the consideration exacted of him as the purchase price of the property. And we also see that this part of the agreement was clearly expressed. There can be no doubt that the parties intended to impose upon Bjorkman payment of the indebtedness, and intended that his liability therefor should be founded upon a valuable consideration.

■ Next, the appellants argue that since the contract was succeeded by a deed, the latter, and not the contract, became the final repository of the parties' intents. Further they argue that since the deed did not exact of the grantee payment of the mortgage debt, Bjorkman was under no duty to discharge the latter. It will be recalled that the individual upon whom the contract imposed the duty to pay is Bjorkman; he was a signatory to the contract. The first deed signed by the Hammerslys, being the one left with Graves, named the American Construction Company as grantee. It mentioned the mortgage but contained no covenant imposing payment upon the grantee. The second and third deeds each named Talboy as grantee. They contained no mention of the mortgage debt. Talboy explained this omission by saying that since the one was bargain-and-sale in form and the other was a quitclaim deed, mention of encumbrances was foreign to the nature of the instruments. The contract provides: ''Each party agrees to convey his respective property to the other by good and sufficient warranty deed.'' It is evident that none of the three deeds signed by the Hammerslys were delivered in performance of this part of the contract. Hence, we cannot look to those instruments as a means

of interpreting the contract. It is easy to understand why the deeds to the corporation and to Talboy contain no assumption clause: neither the corporation nor Talboy had agreed to pay that debt. Apparently if the corporation had accepted delivery of the deed it would have held title for Bjorkman as trustee, and Talboy upon his receipt of the two deeds held a half interest in the property as trustee for Bjorkman. The contract, as is evident from these circumstances, remained as the repository of the intents and purposes of the parties. Therefore, Bjorkman's agreement to assume and discharge the mortgage debt remains unmodified and unsatisfied. We believe that our conclusion is in harmony with the rule stated in Restatement of the Law, Contracts, § 240 (1) (b); and see annotation 84 A. L. R. 1041.

The second, being the final, contention of the appellants is that error was committed when foreclosure was decreed against Talboy. It is argued that foreclosure of the mortgage was barred by §§ 54-111 and 54-114, Oregon Code 1930, which, in their respective order, follow:

"No mortgage upon real estate now, heretofore or hereafter given, shall be a lien or incumbrance, or of any effect or validity for any purpose whatsoever, after the expiration of ten years from the date of the maturity of the obligation of indebtedness secured or evidenced by such mortgage, or from the date to which the payment thereof has been extended by agreement of record. If the date of the maturity of such obligation or indebtedness is not disclosed by the mortgage itself, then * * *."

"Nothing in this act contained shall be construed to bar the foreclosure of any such mortgage, nor shall said act or any portion thereof be plead or considered as a defense to any such foreclosure, if within ten years im-

mediately preceding the commencement of the suit to foreclose there shall have been voluntarily paid any portion of the debt secured by the mortgage, or any interest thereon; provided, that the premises covered by such mortgage are still owned by the original mortgagor * * *."

■■ The note signed by Mrs. Stoehr and secured by the mortgage in issue was payable May 8, 1915, and accordingly, § 54-111, supra, barred any suit instituted for its foreclosure after May 8, 1925, unless some course authorized by the two above sections of our laws was pursued by those interested in the note and mortgage. The fact that interest in the requisite amount was regularly paid did not bar the running of the statute of limitations because the original mortgagor no longer owned the premises. In *Force v. Heusener*, 142 Or. 280, 283, 18 P. (2d) 583, 584, the reasons that led to the enactment of these two sections of our laws is stated. The effect of these laws is to restrict the means by which the maturity of a mortgage obligation can be extended and to force mortgagees to place upon the records extension agreements.

■■ As we have seen, every deed executed after the mortgage was executed and delivered, up to and including the deed to the Hammerslys, mentioned the plaintiff's mortgage and imposed its payment upon the grantee. It is well settled in this state that a grantee who assumes payment of the mortgage debt becomes personally liable to the mortgagee for its payment: *Hurst v. Merrifield*, 144 Or. 78, 23 P. (2d) 124; *Bank of Falls City v. Pugh et al.*, 125 Or. 135, 266 P. 233; *The Home v. Selling*, 91 Or. 428, 179 P. 261, 21 A. L. R. 403. The reason for the liability is the same as that upon which is founded the rights of a payment beneficiary. The rule is thus stated in Restatement of the Law, Contracts,

§ 136a: "A promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise." See Williston on Contracts (Rev. Ed.), § 384. Thus the various grantees who agreed to pay the debt became personally liable to the plaintiff. Each new deed conferred a new right in favor of the plaintiff. The period of limitation upon each grantee's liability was six years (§ 1-204, Oregon Code 1930) unless the mortgage extended for a longer period. The last of these agreements to pay the mortgage debt, being the one that was undertaken by the Hammerslys, was in the deed of conveyance executed by the Dorsetts January 8, 1933. That deed was properly recorded in the deed records of Multnomah county. In *Title & Trust Co. v. Nelson*, 157 Or. 585, 71 P. (2d) 1081, 114 A. L. R. 978, the subject matter of litigation was a note and mortgage executed July 26, 1913, by some mortgagors named Nelson. The day of maturity was July 26, 1914. In 1915 the Nelsons conveyed the mortgaged property to the individuals who become defendants in the suit under review, and on March 22, 1928, those persons signed an extension agreement. It stated that in consideration of an extension of the time of payment to the 26th day of January, 1931, the defendants agreed to discharge the mortgage debt. That instrument was signed by the defendants, but not by the mortgagee, and as a matter of fact actually contained no agreement upon the mortgagee's part to extend the time of payment. The decision, referring to this omission, stated: "This is certainly an oversight and error." The decision held that this agreement, which was recorded, was sufficient to satisfy the requirements of § 54-111, supra. *Richey Loan Co. v. Cheldelin*, 148 Or. 170, 34 P. (2d) 646, was a suit to

foreclose two mortgages executed by the defendant's grantor in 1911. November 30, 1926, the plaintiff (assignee of the mortgage) and the defendant entered into a written agreement that the time of payment should be extended to December 1, 1930, that the rate of interest should be reduced from eight to seven per cent, and that whenever $1,000 should have been paid on the principal the lien of the mortgagees should be released upon a five-acre tract. In holding that the agreement satisfied the requirements of § 54-111, supra, the decision stated: ''This assumption of the mortgages and agreement upon the part of the defendant to pay these mortgages, being based upon a valuable consideration accruing to her, take the case out of the statute and entitles the plaintiff to have the same foreclosed in the manner provided by law.''

 The agreement of each of the *mesne* grantees to assume and pay the indebtedness due to the plaintiff was based upon a valuable consideration; that is, a conveyance of the property to him for a price from which the mortgage indebtedness had been deducted. It is, of course, not necessary that the mortgagee provide the consideration which induces the grantee to assume the indebtedness. Therefore, the Hammerslys, as well as the other grantees, had rendered themselves liable for the indebtedness and in so doing in each instance had extended the period of limitation in the event it was then less than six years. As we have seen, each deed containing the agreement to pay was recorded in the deed records. This placed of record the extension agreement in a public record where it could be conveniently seen by anyone interested in the condition of the title. We believe that this method of extension sufficed to meet the requirements of the stat-

utes above quoted, which require extension by (a) written agreement, and (b) recorded written agreement. Both of those essentials are present in this case.

The above disposes of all contentions advanced by the appellants. We have found no error. The decree of the circuit court is affirmed.

RAND, C. J., and BELT, BEAN, BAILEY and LUSK, JJ., concur.

KELLY, J., took no part in the decision of this case.