Argued March 31, remanded with instructions August 7, 1975

## SENIOR ESTATES, INC., *Respondent, v.*
## BAUMAN HOMES, INC. ET AL, *Appellants.*
### 539 P2d 142

*James H. Clarke,* Portland, argued the cause for appellants. With him on the briefs were George L. Kirklin, Dezendorf, Spears, Lubersky & Campbell.

*Mark H. Wagner,* Portland, argued the cause for respondent. With him on the brief were Ridgway K. Foley, Jr., Souther, Spaulding, Kinsey, Williamson & Schwabe.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, and HOWELL, Justices.

McALLISTER, J.

This is an action for damages for breach of a land sale contract brought by the vendor Senior Estates, Inc., against the purchaser Bauman Homes, Inc. Since the defendants Robert G. Bauman and Jetta V. Bauman were joined only as guarantors of Bauman Homes, Inc., we shall refer to the corporation as if it were the sole defendant. Plaintiff demanded judgment for $354,300.16. The jury returned a verdict in favor of plaintiff for $284,000, and defendant appeals.

Defendant contends on appeal that the trial court erred in refusing to strike from the complaint various claims for damages and in receiving evidence concerning those alleged damages and in improperly instructing the jury on the issue of alleged misrepresentations by the vendor.

The plaintiff, Senior Estates, Inc., was engaged in the development of a retirement community in Woodburn called Woodburn Senior Estates. On February 3, 1970 plaintiff and defendant entered into a contract for the sale and development of 231 building lots in the Woodburn Senior Estates. The contract provided that defendant would sell the lots and build homes thereon for the purchasers.

The total price of the lots was $1,318,800, which was twenty per cent less than plaintiff was charging the public for the lots. The price was to be paid as lots were conveyed to the ultimate purchaser thereof after development by the defendant and plaintiff was to convey title to the purchaser by warranty deed when it was paid for the lot. The contract provided that the defendant should be entitled to possession of the lots "upon commencement of development of each lot."

However, defendant had access to the lots at all reasonable times to prepare plans, conduct tests and to show lots to prospective purchasers. The contract required defendant to pay for no less than six lots per month from May 1, 1970 until January 31, 1971; eight lots per month from February 1, 1971 until October 31, 1971; and seven lots per month from November 1, 1971 until January 31, 1973, the date the contract was to be completed. Interest at the rate of nine per cent was payable on the unpaid balance of the purchase price. Defendant was required to assume and pay the taxes commencing May 1, 1971. Plaintiff agreed to pay that part of the cost of title insurance delivered to the purchasers which was attributable to the value of the land.

The program initiated by the contract was unsuccessful and defendant built only 17 houses and sold only three. Most of the 17 houses were model homes which were sold after defendant left the project.

As a result of the defendant's failure to build houses and sell lots as required by the contract a meeting was held in December 1970 at which plaintiff complained of defendant's failure to sell lots as agreed and termination of the contract was discussed. On January 27, 1971 plaintiff wrote to defendant offering to terminate the contract upon the payment to plaintiff of damages in the sum of $135,000.

On February 17, 1971 defendant's attorney wrote to plaintiff stating that defendant was rescinding the contract because of alleged misrepresentations made to defendant by plaintiff during the negotiations preceding the contract. In April 1971 defendant assigned all its interest in the contract of February 3, 1970 to plaintiff, without prejudice to plaintiff's rights, if any, to enforce the contract.

Thereafter plaintiff undertook a program to

resell the reassigned lots. Mr. George Brice III was hired to manage the project and an agreement was made with Woodburn Construction Co. to construct homes on the reassigned lots. By September 1973 110 lots had been sold and the remaining lots were sold to Woodburn Construction Co. in November 1973 prior to the trial of this action. The amount realized from the sale of the 231 lots subject to the contract of February 3, 1970 was $1,428,450.

Plaintiff began this action for damages on December 23, 1971 and in its amended complaint alleged that it had been damaged as follows:

| | |
|---|---:|
| Contract Sale Price | $ 1,318,800.00 |
| Interest | 201,235.67 |
| Total, | $ 1,520,035.67 |
| Proceeds actually received | 1,428,450.00 |
| Difference | $ 91,585.67 |
| Actual costs: | |
| Cost mortgage company | 797.25 |
| Interest U.S. Bank | 121,258.00 |
| Refinance U.S. Bank | 11,017.50 |
| Taxes on lots | 69,027.04 |
| One-half wages | 14,649.63 |
| Taxes on one-half wage | 858.62 |
| Advertising | 42,156.45 |
| Release charge, U.S. Bank | 2,950.00 |
| Total | $ 354,300.16 |

Plaintiff demanded judgment for $354,300.16 as itemized above.

Defendant first assigns as error the denial of its motion to strike paragraph IX of plaintiff's complaint, which itemized the plaintiff's claims for damages, and the receipt of evidence about the items listed. By its second assignment of error defendant objects to the submission of plaintiff's claim for interest which defendant would have paid plaintiff under the

contract if it had been performed according to the schedule fixed by the contract. Other assignments of error challenge other items of alleged damage which we will discuss infra.

When the contract and all of defendant's interest in the lots was reassigned to plaintiff, plaintiff elected to sell the lots in an effort to mitigate its damages and was able to sell the 231 lots subject to the contract for $1,428,450, which was $109,650 more than the contract price of $1,318,800. Since plaintiff has assumed that its damages have been mitigated by the amount received on the resale of the lots we need not consider whether the lots should have been valued as of the date of the breach instead of by the amount actually received on resale. Plaintiff, of course, claims other damages which, in the aggregate, far exceed the profit realized by it on the resale of the lots.

Plaintiff contends that it is entitled to recover the interest amounting to $201,235.67, which would have accrued under the contract if the contract had been fully performed by defendant. In our opinion the benefit of plaintiff's bargain with respect to its claim for contract interest is limited to the interest on the unpaid balance of the purchase price from May 1, 1970, the date interest began to accrue under the contract, until defendant reassigned to plaintiff all of its interest in the lots subject to the contract. Thereafter plaintiff had both title to the land and exclusive right to the possession thereof. As we said in *Bembridge v. Miller*, 235 Or 396, 408-409, 385 P2d 172 (1963):

> "* * * Absent any stipulation to the contrary, the purchaser has a right to possession or the rents and profits of the land and the vendor a right to interest on the unpaid purchase price. The fruits of possession and the interest are mutually exclusive—there is no right upon the part of either to have both. * * *"

The evidence in this case indicates that the contract interest which had accrued up to the date plaintiff regained exclusive possession of the land totaled $71,744.83. Plaintiff is entitled to recover this amount since this represents a portion of the loss of bargain damages which plaintiff sustained as a result of defendant's breach.

We turn to the issue of consequential damages. While a few cases have refused to award a nonbreaching vendor consequential damages incurred by reason of the vendee's breach, *Howells v. Albert,* 37 Misc 2d 856, 236 NYS2d 654 (1962); *Ridgeway v. Eastern Colorado Development Co.,* 105 Neb 288, 180 NW 587 (1920); *Hayden v. Pinchot,* 172 App Div 102, 158 NYS 215, 218 (1916), it is generally recognized that a vendor may recover, in addition to his loss of bargain damages, supra, all those damages contemplated by the parties which are a natural and proximate result of the vendee's breach. *Kudokas v. Balkus,* 26 Cal App 3d 744, 103 Cal Rptr 318, 324 (1972); *Abrams v. Motter,* 3 Cal App 3d 828, 83 Cal Rptr 855, 870 (1970); *Popwell v. Abel,* 226 S2d 418, 422 (Fla App 1969); *Royer v. Carter,* 37 Cal 2d 544, 233 P2d 539, 543 (1951); 8A Thompson on Real Property 451, §4478 (1963); 3 Joyce on Damages 1831, §1783 (1904); Annotation, Damages—Breach of Contract to Buy Land, 52 ALR 1511-1512, Spencer, Remedies Available Under a Land Sale Contract, 3 Will L J 164, 165 (1965); 92 CJS 528, Vendor & Purchaser § 537(c). As a result, the cost and expenses of resale, which are necessarily incurred and which could be reasonably assumed to have been within the contemplation of the parties, are recoverable. *Duffin v. Patrick,* 216 Kan 81, 530 P2d 1230, 1232 (1975); *Costello v. Johnson,* 265 Minn 204, 121 NW2d 70 (1963); *Davis v. Lacy,* 121 F Supp 246, 252 (ED Ky, 1954); *Royer v. Carter,* supra, 233 P2d at 539; 2 Sutherland on Damages 1943, §570 (1916); 5 Corbin on Contracts 535, §1098A (1964); 77 Am Jur

2d 614-615, Vendor and Purchaser §489; 92 CJS 530, Vendor & Purchaser §537(c). See, also, Simpson on Contracts 395, §196 (2d ed 1965).

Oregon has followed this standard in awarding consequential damages to the nonbreaching party. Thus, in the leading case of *Blagen v. Thompson*, 23 Or 239, 31 P 647, 18 LRA 315 (1892), this court stated:

"* * * The broad general rule in such cases, as we gather it from the authorities, is, that the *plaintiff may recover such damages, including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach by defendant;* and in determining what may reasonably be supposed to have been within the contemplation of the parties as the natural consequences of a breach, all the facts surrounding the execution of the contract and known to both parties may be considered, even if these be such as would not necessarily enter into it, if unknown to the defendant. It is on this principle that an injured party is allowed to charge the other with loss on collateral contracts, on proving notice, which in the absence of such notice, would not be considered within the contemplation of the parties: 1 Sutherland on Damages, 79; 1 Sedgwick on Damages, §149; *Hadley v. Baxendale,* 9 Ex. 341; *Hammond v. Bussey,* 57 L. J. Q. B. 58; *Griffin v. Colver,* 16 N.Y. 489 (69 Am. Dec. 718); *Booth v. Spuyten Duyvil R. M. Co.* 60 N.Y. 487; *Hammer v. Schoenfelder,* 47 Wis. 455; *Messmore v. N. Y. Shot & Lead Co.* 40 N. Y. 422. These and other authorities on this question are carefully collated and discussed in 1 Sedgwick on Damages, § 144 *et seq.,* and in 5 Am. & Eng. Ency. Law, title 'Damages,' and we shall therefore attempt no review of them but shall only refer to the admirable statement of the rule by Mr. Justice SELDEN,

in *Griffin v. Colver,* 16 N.Y. 489 (69 Am. Dec. 718), 'that the injured party is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions,—the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.' " (Emphasis added.) 23 Or at 248-249.

Similarly, in *Gordon v. Curtis Bros. et al,* 119 Or 55, 66-67, 248 P 158 (1926), this court stated:

"Any damages sustained by plaintiff that may reasonably be supposed to have been within the contemplation of the parties at the time the contract was executed, and which were the approximate and natural consequences of the breach by defendant, may be recovered in an action for damages for breach of the contract. Such damages would include any reasonable sum actually and necessarily paid out by plaintiff on account of the breach of the contract, although it may be a loss 'on collateral contracts' * * * ."

See, also, *Smith v. Pallay,* 130 Or 282, 289, 279 P 279 (1929); *Martin et al v. Neer,* 126 Or 345, 349-351, 269 P 342 (1928).

It thus becomes necessary to determine whether each of the amounts claimed by plaintiff as damages "may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach by defendants". *Blagen v. Thompson,* supra, 23 Or at 248.

■ Plaintiff, in its complaint, sought property taxes in the amount of $69,027.04, which represents the amount plaintiff paid in such taxes until the lots were

ultimately resold. Under the foregoing authority this portion of the plaintiff's claim for damages is recoverable since defendant's failure to perform was both the proximate cause of the plaintiff incurring such an expense and such damage could reasonably be supposed to have been within the contemplation of the parties as a consequence of defendant's breach.

Defendant, however, contends that "[s]uch expenses are not a loss sustained by reason of defendant's breach of the contract, and are not recoverable." As authority for this contention defendant relies on *Abrams v. Motter,* supra. This reliance is misplaced. In *Abrams* the court was concerned with a contract to sell a residence. The vendor, after the vendee's breach, recovered possession of the property and continued to live in the residence and enjoy its use. Based upon this fact the court denied the vendor's claim for property taxes he incurred while living in the residence which was the subject of the contract. In reaching its decision the court distinguished the case before it from *Allen v. Enomoto,* 228 Cal App 2d 798, 39 Cal Rptr 815 (1964), where property taxes were awarded to the nonbreaching vendor who, after diligent effort, resold the property within a reasonable time. In commenting upon this holding the court stated:

"* * * The unspoken premise of such a holding is that the vendor (who still wishes to sell the property) actually has had to pay out-of-pocket expenses proximately caused by the vendee's breach." 83 Cal Rptr at 870.

The facts in this case indicate that plaintiff's purpose in retaking the lots was to effect a resale and not to enjoy the fruits of possession. Had defendant performed the contract it would have incurred the taxes which plaintiff was forced to pay. As a result, the award of this portion of plaintiff's damages was proper.

Plaintiff's next claim for damages consists of $121,258 in excess interest paid to the United States National Bank on 90-day notes.

It appears that plaintiff had entered into an agreement with the U. S. National Bank which provided that 77 per cent of the proceeds realized from the sale of lots at Woodburn Senior Estates would be used to repay the outstanding notes. Thus, the repayment of such notes was directly related to the anticipated rate of payments expected to be received from defendant under the contract schedule. As a result, plaintiff argues that such interest is recoverable since it proximately resulted from the defendant's breach. Defendant, however, contends that this amount is not recoverable since the obligations evidenced by the notes were used to finance other of plaintiff's business enterprises.

■ Whether or not the loss incurred on such an agreement is related to the contract in question, it is clear that consequential damages may be awarded for "any reasonable sum * * * paid out by plaintiff on account of the breach of the contract, although it may be a loss 'on collateral contracts' ". *Gordon v. Curtis Bros. et al*, supra, 119 Or at 67. However, recovery of such sums is conditioned on the defendant having notice that a potential loss on such collateral contracts would result on account of their breach. *Blagen v. Thompson,* supra, 23 Or at 248.

■ Thus, regardless of whether or not the arrangement with the U. S. National Bank can be characterized as collateral or one directly related to the contract in question, it was incumbent on plaintiff to show that the loss sustained on these notes was reasonably "within the contemplation of both parties at the time of the making of the contract". *Blagen v. Thompson,* supra, 23 Or at 248.

The testimony of both George Brice, Jr., and George Brice III clearly indicates that defendant had no notice of either the existence of these 90-day notes or that the payment of such notes was directly related to the defendant's purchasing the lots according to the contract schedule. On cross-examination the following exchange took place between defendant's attorney and George Brice III:

[By Mr. Kirklin] And, of course, you never told Mr. Bauman that the contract with Bauman Homes was collateral to the U. S. National Bank, did you?

[By George Brice III] That was part of our business affairs.

A similar exchange took place between defendant's attorney and George Brice, Jr.

Q [By Mr. Kirklin] In any event, Mr. Brice, you never told Mr. Bauman, or anyone connected with his organization, about this 77 percent deal with the United States National Bank?

A [By Mr. Brice] No, we had no reason to.

Q [By Mr. Kirklin] For that matter, you never told them you had a loan outstanding with the U. S. National Bank?

A [By Mr. Brice] No, we had no reason to.

Q [By Mr. Kirklin] And you felt it was none of their business?

A [By Mr. Brice] Yes.

Q [By Mr. Kirklin] And, as a matter of fact, although you didn't tell Mr. Bauman about that, you are asking all the interest charges on account of the breach by Mr. Bauman on the contract, is that correct?

A [By Mr. Brice] That is correct.

From the foregoing testimony it is clear that defendant had no notice that its breach would result in the plaintiff incurring $121,258 in excess interest on such notes. For this reason this amount was not recoverable.

■ The same is true for plaintiff's various claims for refinancing charges it incurred prior to reselling the lots since there is no evidence that such damages were reasonably within the contemplation of the parties at the time the contract was executed.

■ As we indicated earlier, resale expenses are generally held to be proper items of damages to be awarded to the vendor who elects to resell the property after the vendee's breach. As a result, the plaintiff could properly recover the wages and payroll taxes and advertising expenses it incurred in reselling the property.[1] However, plaintiff is not entitled to recover its claim for title insurance costs since, by the terms of the contract itself, it was to assume this expense. Thus, the fact that such an expense was incurred by plaintiff in reselling the lots cannot be said to be the "proximate and natural consequence of a breach by defendant". Furthermore, the purpose of awarding damages to the nonbreaching vendor is to give him the benefit of his bargain. Since, by the terms of the contract, the payment of title insurance costs was not part of the benefit of plaintiff's bargain, it is not entitled to this sum.

In summary, we find that the proper measure of

---

[1] Defendant also argues that plaintiff's resale expenses should not be allowed in the absence of a showing that they were reasonable in amount. Generally, actual damages must be shown with "reasonable certainty." Parker v. Harris Pine Mills, Inc., 206 Or 187, 197, 291 P2d 709, 56 ALR2d 382 (1955). In this case, the uncontradicted testimony of Mr. Donald W. Blenkinsop, the accountant for Woodburn Senior Estates, provided a sufficient basis for the jury to find that the damages claimed by plaintiff were calculated to a "reasonable certainty."

plaintiff's damages should have been computed as follows:

| | |
|---|---:|
| Resale price for 231 lots | $ 1,428,450.00 |
| Contract price for 231 lots | 1,318,800.00 |
| Gain on Resale | 109,650.00 |

| | |
|---|---:|
| Contract interest prior to reassignment | $ 71,744.83 |
| Taxes | 69,027.04 |
| Wages | 14,649.63 |
| Payroll taxes | 858.62 |
| Advertising | 42,156.45 |
| Total Recoverable Damage | $ 198,436.57 |

| | |
|---|---:|
| ALLOWABLE DAMAGE | $ 198,436.57 |
| GAIN ON RESALE | 109,650.00 |
| RECOVERABLE DAMAGE | $ 88,786.57 |

Defendant contends that the trial court erred in instructing the jury as to the alleged misrepresentations as follows:

"The defendants next allege that they were induced to enter into the contract in question by certain material misrepresentations specified in their answer. If you find from the evidence in this case that any of the alleged representations were in fact made by or on behalf of plaintiff to the defendants, that such representations were in fact false when made, that such representations were material, and that defendants reasonably relied upon such misrepresentations in entering into the alleged contract, then such contract would not be enforceable against defendants. A statement by one party that in the future he will do or cause to be done some act does not constitute a misrepresentation in the event the act is not performed, unless at the time he made the statement he had no intention of performing the act. A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with respect

to the transaction. If the defendants continued to perform under the contract after they were *fully aware* of the alleged misrepresentations, then they would not thereafter be excused from performing the contract. (Emphasis added.)

Defendant excepted to the instruction on the ground that the jury should have been instructed that the defendant had a reasonable time within which to rescind the contract after it became aware of plaintiff's misrepresentations.

 Defendant is correct in asserting that the right to rescind an executory contract must be exercised within a reasonable time after the discovery of the fraud. *Brown et ux v. Haassentab et ux,* 212 Or 246, 256, 319 P2d 929 (1957); *Elliott v. Mork,* 144 Or 246, 248, 249-250, 24 P2d 1036 (1933); Restatement of Contracts §483. However, the fact that the lower court used the phrase "fully aware" rather than "within a reasonable time" does not warrant reversal on this ground. In the context of this case we think the jury was not misled and that defendant was not prejudiced.

The case is remanded to the trial court with instructions to enter a judgment consistent with this opinion.