Argued and submitted December 2, 1986, Court of Appeals reversed and judgment of
trial court affirmed May 27, reconsideration denied July 8, 1987

SECURITY STATE BANK,
*Petitioner on Review,*

*v.*

LUEBKE et al,
*Respondents,*

*and*

RATHBONE,
*Respondent on Review.*

(TC 32796; CA A36325; SC S33238)

737 P2d 586

R. L. Marceau, Bend, argued the cause for petitioner on review. With him on the petition was Marceau, Karnopp, Petersen & Nash, Bend.

Lawrence W. Erwin, Bend, argued the cause for respondent on review. With him on the response was Babb, Avedovech & Erwin, Bend.

GILLETTE, J.

## GILLETTE, J.

This is an action to foreclose a mortgage on real property. Security State Bank (Bank) petitions for review of the Court of Appeals' determination that its action was barred by the 10-year statute of limitations. ORS 88.110. *Security State Bank v. Luebke,* 80 Or App 669, 723 P2d 369 (1986). We reverse.

The facts are accurately set out in the Court of Appeals opinion as follows:

"On July 15, 1970, defendant Luebke executed and delivered to plaintiff a promissory note in the amount of $46,560.81, secured by a mortgage on the real property that is the subject of this action. The maturity date of the note and the mortgage was July 15, 1971. The note and mortgage were recorded on May 7, 1971. When the note was not paid on time, the parties renegotiated its terms to provide that Luebke would pay $300 monthly on $47,000, with interest at 6.5 percent. Plaintiff did not record the extension agreement.

"Between 1972 and 1975 the mortgaged property was the subject of a series of transactions. First, Luebke sold it on contract to defendants Corrigan. Next, the Corrigans mortgaged their vendees' interest to defendants Bowlin. The Corrigans then sold the property on contract to defendant Johnson, who in turn sold it on contract to defendant Rathbone. Each of those transactions was recorded, and each of the parties took the property subject to plaintiff's mortgage. However, none of the parties assumed the mortgage." 80 Or App at 671. (Footnote omitted.)

When Luebke failed to comply with the terms of the renegotiated promissory note, Bank declared a default and accelerated the balance due. Luebke failed to pay the balance due and, on August 19, 1982, Bank filed this action. Defendant Rathbone argued, *inter alia,* that ORS 88.110, which provides for a presumption of payment 10 years after the mortgage debt matures, barred the action. The trial court ruled that the statute did not bar the action, and defendant appealed. As noted, the Court of Appeals reversed. We reverse the Court of Appeals.

ORS 88.110 provides:

"Except as provided in ORS 88.120, no mortgage upon real

property shall be a lien upon such property after the expiration of 10 years from the date of maturity of the mortgage debt or from the date to which the payment thereof has been extended by agreement of record; and after such 10 years the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure. If the date of maturity of the debt is not disclosed by the mortgage itself, then the date of the execution of the mortgage shall be deemed the date of maturity of such debt."

ORS 88.120 provides:

"Foreclosure of a mortgage on real property is not barred by ORS 88.110 when all the following facts exist at the time the foreclosure suit is commenced:

"(1)   Any portion of the mortgage debt, or any interest thereon, has been voluntarily paid within the 10 years immediately preceding commencement of the suit.

"(2)   The original mortgagor still owns the mortgaged property.

"(3)   No lien or right of a third person has attached to the property after the expiration of the 10-year period referred to in ORS 88.110."

ORS 88.110 and ORS 88.120 are unusual statutes. By enacting ORS 88.110, the legislature created a conclusive presumption which, in turn, creates a 10-year statute of limitations ("* * * and no suit shall be maintainable for its foreclosure.") In ORS 88.120, the legislature then created an exception to the effect of the statute of limitations.

■      ORS 88.110 and 88.120 interact with another set of statutes, the recordation statutes (ORS 93.610 to 93.800). The purpose of recordation statutes is to protect members of a designated group, usually subsequent purchasers who in good faith and for value purchase property unencumbered by a prior recorded interest and who then first record their own interest. *See Nelson v. Hughes,* 290 Or 653, 661-62, 625 P2d 643 (1981). The general rule of priority that applies to two competing recordable interests in real property is that the later interest prevails over the earlier only if it is recorded earlier and taken "in good faith and for a valuable consideration." ORS 93.640(1). In the present case, because Bank's interest was recorded first, Bank would prevail if that were the only applicable rule.

A prospective purchaser of real property, in checking the real property records for encumbrances, must read ORS 93.640(1) and ORS 88.110 together in order to be protected. If a mortgage less than ten years old exists in the records, an encumbrance on the property exists and the purchaser cannot expect to have the protection of 93.640(1).

The parties agree that Bank commenced this action more than ten years after the mortgage debt matured. Bank argues, however, that all three conditions listed in ORS 88.120 are satisfied and, therefore, ORS 88.110 should not bar the suit. We examine each condition in turn, keeping in mind the interrelationship with the recordation statutes previously discussed.

### 1. *Payment on the mortgage debt.*

The parties agree that Luebke made payments during the ten years immediately preceding this suit. As noted above, however, the note was renegotiated in 1971. In his response to the petition for review, Rathbone argues for the first time that the renegotiated note represented an entirely new obligation, rather than an extension of the original mortgage debt, and that Luebke's payments on the renegotiated note were not payments on "the mortgage debt" within the meaning of ORS 88.120(1). The trial court, however, found that "[t]he promissory note of July 15, 1971 was a replacement of the earlier note, not a payment of the note, and continued to be secured by the mortgage." We agree. Luebke's payments on the mortgage debt, therefore, satisfied the first condition set out in ORS 88.120.

### 2. *Ownership of the mortgaged property.*

As to the question of ownership, Luebke, the original mortgagor, retained legal title when he sold the property on contract to the Corrigans. Under the doctrine of equitable conversion, however, equitable ownership passed to the contract purchasers and, at the time of this suit, was held by Rathbone. The question is whether the legislature intended the term "owns" to apply to one who enters into a contract to sell the subject property while retaining legal title as security for the purchase price.

The original versions of ORS 88.110 and 88.120 were

enacted in 1913 and 1917, respectively.[1] No legislative history survives to explain what the legislature meant by the term "owns." We therefore do not know whether the legislature considered the situation in which the original vendor sold the mortgaged property on contract but retained legal title. The proper inquiry in such a case is to determine how the legislature would have intended its statute to be applied if it had considered the problem. *See State v. Tippie,* 269 Or 661, 665, 525 P2d 1315 (1974); *see also* Frohnmayer, *Of Legislative Intent, the Perils of Legislative Abdication, and the Growth of Administrative and Judicial Power,* 22 Willamette L Rev 219, 226 (1986).

The doctrine of equitable conversion was firmly entrenched in Oregon law when ORS 88.120 was enacted. *See, e.g., Walker v. Goldsmith,* 14 Or 125, 137, 12 P 537 (1886). Under it, the bundle of rights known as ownership is divided between the parties to an executory land sale contract. The purchaser is regarded as the owner and generally has the right to full possession and enjoyment of the property. *Senior Estates v. Bauman Homes,* 272 Or 577, 583-84, 539 P2d 142 (1975); *Bembridge v. Miller,* 235 Or 396, 408-9, 385 P2d 172 (1963). The vendor's position is analogous to that of a mortgagee who retains legal title as security for the purchase price. *Sievers v. Brown,* 34 Or 454, 457-58, 56 P 171 (1899); 3 American Law of Property § 11.22, 62 (Casner ed 1974). However, the equitable conversion doctrine traditionally was not employed in a way that would defeat Luebke's continuing ownership under the circumstances presently before us.

Although courts uniformly applied the equitable conversion doctrine to the vendor-purchaser relationship, for example, in determining right to possession, *see, e.g., Senior Estates v. Bauman Homes, supra,* 272 Or at 583-84, the doctrine did not necessarily carry over into cases involving third party creditors.

"[N]either this court nor other courts actually apply the doctrine of equitable conversion automatically. Equitable conversion is not invoked unless it appears necessary to invoke it in a

---

[1] The wording of both provisions was changed by the Statute Revision Council when the Oregon Revised Statutes were first codified in 1953. The Council intended to simplify and modernize the statutory language without changing its meaning or substance.

particular case in order to accomplish equity according to established rules of equity jurisprudence.

"\* \* \* \* \*

"It seems, therefore, not inappropriate to conclude \* \* \* that equitable conversion is not a condition of property for all purposes, but is only a name given to a situation resulting from the application of equitable doctrines to special states of facts. \* \* \* This does not mean, however, that the whim of the chancellor will determine when an equitable conversion takes place. Cases of the same general class ordinarily will be treated alike. Thus, in cases involving the devolution of interests under a specifically enforceable contract of sale of real property, equity courts have almost uniformly seen fit to apply the doctrine of equitable conversion. \* \* \*

"*The reasons which persuade equity to hold that equitable conversion applies in devolution cases, or (in a majority of states) in risk-of-loss cases, do not necessarily carry over to cases involving the rights of third-party creditors having judgment liens upon real property.* Therefore, although it is settled in Oregon that in equity a purchaser is regarded as the owner of the real property for some purposes, it has been held (in other than vendor-purchaser cases) that the judgment lien [against the purchaser] does not attach to such purchaser's equitable interest in the land. *Smith v. Ingles,* 2 Or 43, 45 (1862) \* \* \*.

"Equally consistent with the view that an equitable conversion does not take place in every situation where there is a contract to purchase land are the cases which hold that where the vendor is the judgment debtor the judgment lien will attach to the vendor's interest to the extent of the unpaid purchase price. See, e.g., *May v. Emerson,* 52 Or 262, [96 P 454, 96 P 1065 (1908)] \* \* \*." *Heider v. Dietz,* 234 Or 105, 112-15, 380 P2d 619 (1963) (emphasis added).

As noted, the predecessors to ORS 88.110 and 88.120 were enacted in 1913 and 1917, respectively. Or Laws 1913, ch 304; Or Laws 1917, ch 32. In "other than vendor-purchaser cases," the equitable conversion doctrine was not "automatically applie[d] in every instance of a land-sale contract." *Id.* at 115. *See also* 3 American Law of Property, *supra,* 82-85, § 11.22. Specifically, the state of the law in 1917 was that a subsequent purchaser was not regarded as the "owner" for all purposes; a judgment lien against the purchaser did not attach to the purchaser's equitable interest and a judgment creditor

of the vendor had a lien on the land to the extent of the unpaid purchase price. This is consistent with the self-evident rule that equitable remedies are only granted "in a particular case in order to accomplish equity according to established rules of equity jurisprudence." *Heider v. Deitz, supra,* 234 Or at 112. For the reasons discussed above, we hold that use of the equitable conversion doctrine to determine "ownership" under ORS 88.120 is inappropriate. For the purpose of ORS 88.120, Luebke "still owns the mortgaged property." The second requirement of ORS 88.120 has been met.

### 3. *Lien or right of third person.*

Bank alternatively contends that ORS 88.120 was intended to protect only those third parties who *acquired their interest in reliance* on the "conclusive presumption" of payment provided by ORS 88.110. Under Bank's theory, Rathbone would not be entitled to raise ORS 88.110 as a defense because he acquired his interest before the expiration of the ten-year limitation period. Bank relies on *Day v. Celoria,* 116 Or 250, 241 P 58 (1925), and *Force v. Heusner,* 142 Or 280, 18 P2d 583 (1933).

Bank's reliance on these two cases is understandable. In *Day v. Celoria,* this court interpreted an earlier version of ORS 88.120, which provided:

"Nothing in this act contained shall be construed to bar the foreclosure of any such mortgage, nor shall said act or any portion thereof be plead or considered as a defense to any such foreclosure, if within ten years immediately preceding the commencement of the suit to foreclose there shall have been voluntarily paid any portion of the debt secured by the mortgage, or any interest thereon; provided, that the premises covered by such mortgage are still owned by the original mortgagor and are unaffected by any lien or liens, or rights of third parties which may have attached or intervened, subsequent to the expiration of the ten year period in Section 9887 described." Oregon Laws, section 9890 (1920).

This court held that the plaintiff could maintain a foreclosure action, even though the ten year limitation period had expired and the original mortgagor no longer owned the property. The court construed the statute as follows:

"Two conditions must exist to prevent tolling the statute by payment of interest, viz.:

"(a) The title to the land must be vested in some one other than the original mortgagor, and, (b) *the interest of the holder of that title must have attached subsequent to the expiration of the ten-year period from the maturity of the debt secured.*

"But the interest of the defendant Celoria attached prior, not subsequently, to the expiration of the ten-year period after maturity of the note secured by the mortgage. Defendant Celoria's interest attached December 2, 1920. The ten-year period expired on the tenth day of February in 1921. The payments of interest, therefore, tolled the statute according to the plain terms of the statute." *Day v. Celoria, supra,* 116 Or at 252 (emphasis added).

In *Force v. Heusner,* this court relied on *Day v. Celoria* for the proposition that "a third party cannot maintain the defense of the Statute of Limitations unless the lien or interest attaches 'subsequent to the expiration of the ten-year period.'" *Force v. Heusner, supra,* 142 Or at 284.

While the *Day* and *Force* reading of ORS 88.120 was not the only one possible from the language of the statute alone, we think those cases were consistent with the most obvious purpose of the statute. The enactment of ORS 88.120 served two complementary purposes: (1) to protect mortgagees who may have been "lulled" into a false sense of security by receiving continuing mortgage payments and (2) to limit the protection of ORS 88.110 to a third person whose lien or right attached subsequent 10 years after the maturity date of the prior mortgage lien, *Force v. Heusner, supra,* 144 Or at 283, or, otherwise stated, "to remove the conclusive presumption imposed by [ORS 88.110] when payments had been made within ten years of suit, saving it only for the liens or rights acquired by third parties justifiably relying on the presumption." Note, *Mortgages - Statute of Limitations,* 12 Or L Rev 343, 345-46 (1933).

Consistent with this purpose, this court has refused to extend the protection of ORS 88.110 to a subsequent purchaser as against a prior mortgagee where the mortgagor has made payments to the mortgagee within ten years of the foreclosure action and the purchaser's interest arose less than ten years from the date of maturity. *See Day v. Celoria, supra,* 116 Or at 252; *Force v. Heusner, supra,* 142 Or at 284 ("a third

party cannot maintain the defense of the Statute of Limitations unless the lien or interest attaches 'subsequent to the expiration of the ten-year period' "); *see also Zanietta v. McCulloch,* 130 Or 396, 399, 280 P2d 328 (1929) (third party's interest arose 10 years after mortgage maturity date; "[f]or that reason, \* \* \* plaintiff's mortgage, \* \* \* as against the [third party's] mortgage, or against any liens or rights of third parties attaching subsequent to [the 10 year post-maturity date], has ceased to exist").

One might conclude, however, that the waters in this regard have been somewhat muddied by certain dicta in the later cases *Richey Loan Co. v. Cheldelin,* 148 Or 170, 34 P2d 646 (1934) and *Tuthill v. Stoehr,* 163 Or 461, 98 P2d 8 (1940). In *Richey Loan* and *Tuthill,* however, the court was not confronted with a difficult case where giving a third party the protection of ORS 88.110 would do violence to the intent of ORS 88.110 and 88.120. In both cases, the person claiming the benefit of what is now ORS 88.120 had assumed and agreed to pay the mortgage. *See Richey Loan,* 148 Or at 176 (case was "take[n] \* \* \* out of the statute" because defendant's "agreement \* \* \* to pay these mortgages, being based upon a valuable consideration accruing to her" "constituted a binding agreement on the part of the defendant to pay the notes secured by the mortgages"); *Tuthill,* 163 Or at 474-75 (assumption of mortgage by third party takes case out of the statute). Bank is correct in arguing that, nothwithstanding *Richey Loan* and *Tuthill,* this court "has never protected a third party interest from foreclosure that attached within the post-maturity 10 years." As to the meaning of ORS 88.120(3), *see also* Note, 12 Or L Rev *supra,* at 343-44, where it is stated:

"A brief survey of the history and purposes of sections 54-111, 54-112 [both now codified at ORS 88.110], and 54-114 [now codified at ORS 88.120] seems a necessary preliminary to any consideration of these statutes and interpretative Oregon cases. To remove the uncertainty attendant to the status of titles whose records for many years indicated an unsatisfied mortgage, sections 54-111 and 54-112 were enacted by the legislature in 1913. In brief these two statutes provided for a conclusive presumption of payment, satisfaction, and discharge to arise upon the expiration of a ten year period succeeding the date of the maturity of the obligation secured by the recorded mortgage or from the maturity date of any extension agreement of record.

"This state of the law made it possible for many innocent mortgagees to be lulled into inactivity by payments made to them by scheming mortgagors, who upon the expiration of the ten year period at once invoked the conclusive presumption. This situation probably led to the enactment of section 54-114 in 1917. Briefly, this statute removed the presumption where any payment of principal or interest had been made within the ten years immediately preceding commencement of the foreclosure suit. But in recognition of the true principle underlying sections 54-111 and 54-112, the statute protected a third party who had acquired a lien or right subsequent to the ten year period succeeding the maturity date of the prior mortgage lien. The reason for the provision giving priority to the subsequent owner of a lien or rights over the prior lien is. apparent; this third party should be able to rely on the record which showed the bar of the statute of limitations against the first mortgage. * * *"

■ We adhere to our decisions in *Day* and *Force*. No person whose interest arises before the 10-year period expires can invoke ORS 88.110 if requirements (1) and (2) of ORS 88.120 are also made out.

Even if we would be inclined, as a matter of first impression, to read ORS 88.120 differently now, this is not a matter of first impression. We have recently stated:

"When this court interprets a statute, the interpretation becomes 'a part of the statute as if written into it at the time of its enactment.' *State of Oregon v. Elliott,* 204 Or 460, 465, 277 P2d 754, *cert den* 349 US 929, 75 S Ct 772, 99 L Ed 1260 (1955). If, in interpreting a statute, we make a mistake or proceed on a course which offends the legislature, that body can rectify our action. * * * [W]e leave it to the legislature whether there should be change." *State v. White,* 303 Or 333, 348, 736 P2d 552 (1987).

*See also Broyles v. Estate of Brown,* 295 Or 795, 804, 671 P2d 94 (1983) (Lent, J., dissenting) ("when the court errs in construing a statute * * * correction should be made by the legislative department of government"), *quoted in State v. Owens,* 302 Or 196, 209, 729 P2d 524 (1986) (Gillette, J., concurring); *State v. Newton,* 291 Or 788, 815, 636 P2d 393 (1981) (Lent J., dissenting, to same effect as quoted *Broyles* statement). The *White* rationalization of stare decisis is particularly pertinent in the context of property law. "In law, especially when property

rights are at stake, consistency, that is, adherence to precedent, is a greater virtue than strict logic." *Dorsey v. Tisby,* 192 Or 163, 180, 234 P2d 557 (1951).

The *Day-Zanietta-Force* rule requiring third party interests to attach more than ten years after the mortgage's maturity as a prerequisite to the protection of ORS 88.110 dates back 62 years. Parties in situations comparable to that of Rathbone have never successfully invoked ORS 88.110 or its predecessors. No decision of this court has ever disputed the *Force* rationale "that, in 1917, [ORS 88.120] was enacted to protect the rights of mortgagees [who have received mortgage payments within the relevant ten year period] and those of third parties whose liens attached subsequent to the expiration of the ten-year period." 142 Or at 283. This is not the time to start. Rathbone, having acquired his interest prior to the expiration of the 10-year statutory period, was not entitled to the benefit of ORS 88.110. The Court of Appeals conclusion to the contrary was error.[2]

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

---

[2] One further issue under ORS 88.120(3) deserves brief discussion. The mortgage in this case matured on July 15, 1971. The only lien or right attaching more than ten years after that date was a tax lien for 1982-83, which attached on July 1, 1982. *See* ORS 311.405(2). Defendant argues that this tax lien was a "lien or right of a third person" under ORS 88.120(3).

Tax liens have always had priority over all other encumbrances on the subject property. *See* ORS 311.405(7)(a). The government has never needed the protection afforded "third persons" under ORS 88.120(3). We do not believe that the government falls within the class of third persons that ORS 88.120 was designed to protect. The tax lien was not a "lien or right of a third person" within the meaning of the statute.