Argued and submitted November 18, 2019, reversed and remanded
October 14, 2020, petition for review denied April 8, 2021 (367 Or 826)

LINCOLN LOAN CO.,
*Plaintiff-Respondent,*

*v.*

THE ESTATE OF GEORGE GEPPERT,
Deceased, and all heirs and devisees,
*Defendants,*

*and*

PDXF3, LLC,
*Appellant.*

Multnomah County Circuit Court
17CV00761; A168925

477 P3d 7

PDXF3 appeals an order denying its motion seeking disbursement of "surplus funds" from a foreclosure sale. PDXF3 argues that the trial court erred when, rather than disbursing the surplus funds to PDXF3, it ordered that the surplus funds be held until a final judgment was entered in a separate case. *Held*: The trial court erred. Under ORS 18.950(1), the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and to do so in accordance with the proceeds recipients' respective interests in the funds. In this case, that meant that the trial court was required to order that the surplus funds be distributed to PDXF3.

Reversed and remanded.

Marilyn E. Litzenberger, Judge.

George W. Kelly argued the cause and filed the briefs for appellant.

Melinda B. Wilde argued the cause for respondent. Also on the brief was Melinda B. Wilde, LLC.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

This action concerns the distribution of proceeds from a foreclosure sale. Plaintiff in this case is Lincoln Loan. Lincoln Loan brought a foreclosure action against defendant, the estate of Geppert. The estate of Geppert sold its interests in the foreclosed property to PDXF3, which argued that it was the "successor-in-interest" to the estate of Geppert, and that it was entitled to the "surplus" funds from the foreclosure sale. PDXF3 filed a motion requesting that the trial court (1) enter an order directing the clerk of the court to "disburse" to Lincoln Loan the proceeds of the foreclosure sale in an amount that would satisfy the money award to Lincoln Loan in the judgment of foreclosure, and (2) then distribute the "surplus" funds from the foreclosure sale to PDXF3. The trial court denied PDXF3's motion.

Instead, the trial court ordered (1) a distribution to Lincoln Loan of the proceeds of the foreclosure sale in an amount that would satisfy the money award in the judgment of foreclosure and a supplemental judgment, and (2) that the remaining proceeds from the foreclosure sale (that is, the "surplus funds") be held until a final judgment is entered in a separate case, Case No. 17CV56012, at which time the trial court would "make a determination of the recipient of such funds." Case No. 17CV56012 is a foreclosure proceeding in which Lincoln Loan seeks to foreclose mortgages that were senior to the mortgage foreclosed upon in this case. PDXF3 appeals the trial court's order.

As explained below, we conclude that the trial court erred. More specifically, we conclude that, under ORS 18.950(1), the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and to do so in accordance with the proceeds recipients' respective interests in the funds. The trial court therefore erred when it instead deferred making "a determination of the recipient" of the surplus funds. Additionally, given that, at the time that the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, the only interests that had been adjudicated were those of Lincoln Loan and PDXF3 in relation to the mortgage foreclosed upon in this case, we

conclude that the trial court was required to order that the surplus funds be distributed to PDXF3.

## I.   FACTS AND PROCEDURAL HISTORY

The pertinent facts are undisputed, and we set them out chronologically, in detail, to help frame the legal issues in this case. In January 2017, Lincoln Loan filed a complaint alleging that, in November 1999, Geppert executed a promissory note and mortgage on certain real property in Multnomah County. The complaint sought to foreclose on that real property. Geppert had died prior to the filing of the complaint, and Lincoln Loan alleged that his estate—the defendant in the foreclosure suit—had defaulted on the payments due.

The complaint filed by Lincoln Loan in January 2017 requested, among other relief, a judgment for the balance owed under the November 1999 note and mortgage, that the mortgaged property at issue "be decreed sold according to law," and that "the proceeds of this sale be brought into court and applied in payment of the costs of the sale, then in payment of the amounts due plaintiff, and any excess then paid to the defendants." The estate of Geppert did not file an answer to the complaint or otherwise appear, and the trial court entered an order of default against it.

In May 2017, the trial court issued a judgment of foreclosure awarding the monetary relief Lincoln Loan prayed for in its January 2017 complaint, ordering that the estate of Geppert's interest in the real property at issue be sold, and ordering that "the proceeds of this sale be brought into court and applied first toward the costs of sale; then toward the satisfaction of plaintiff's judgment awarded herein." It also ordered that, after satisfaction of "plaintiff's judgment," the proceeds be applied "toward the satisfaction of other secured creditors, and the surplus, if any, to the defendants."

Subsequently, the court issued a writ of execution directing the sheriff of Multnomah County to sell the real property at issue. The instructions accompanying the writ of execution instructed the sheriff to deliver the net proceeds

of the foreclosure sale to the court administrator, along with the return on the writ of execution.

The property was sold in a foreclosure sale in October 2017, and the sheriff filed a "return of execution" stating that the property sold for $221,000.

In December 2017, Lincoln Loan filed a complaint in a separate case, Case No. 17CV56012, seeking to foreclose on three mortgages that burdened the same real property as the mortgage that was the subject of Lincoln Loan's January 2017 complaint. Those three mortgages were senior to the mortgage that was the subject of Lincoln Loan's January 2017 complaint.

In March 2018, a supplemental judgment was entered in this case awarding Lincoln Loan additional costs and attorney fees.

Additionally, in March 2018, PDXF3 purchased from the Geppert estate "any and all right, title and interest" in the real property that was foreclosed under the May 2017 judgment of foreclosure. PDXF3 also filed a motion seeking an order "directing the trial court clerk to disburse to [Lincoln Loan] the sale proceeds from the sale" and disburse any "surplus balance" from the sale to PDXF3. PDXF3 argued that ORS 18.950(4) provides "that the court administrator shall pay the proceeds of an execution sale, after payment of [certain costs] and satisfaction of the judgment, as directed by the court in order of distribution." In PDXF3's view, the amount due Lincoln Loan was only $65,989.06, and under ORS 18.950(4), PDXF3 was "entitled to all remaining proceeds of the sale after distribution to [Lincoln Loan]."

Lincoln Loan then filed its own motion for disbursement of funds under ORS 18.950 seeking the funds owed to it under the money award in the judgment for foreclosure and supplemental judgment. Lincoln Loan also claimed that it was entitled to any proceeds of the foreclosure sale "remaining thereafter" to "satisfy the debts being foreclosed" in Case No. 17CV56012. Lincoln Loan contended that the judgment of foreclosure required the trial court to pay "other secured creditors" before "any surplus is paid to the defendant." According to Lincoln Loan, it was an "other

secured creditor," because it held the three senior mortgages that were the subject of the December 2017 complaint in Case No. 17CV56012.

On September 11, 2018, the trial court issued an order denying PDXF3's motion and granting Lincoln Loan's motion in part. The September 11, 2018, order directed that $71,210.98 be distributed to Lincoln Loan (the amount the trial court determined to be due to Lincoln Loan in relation to the mortgage foreclosed upon in this case), and ordered that "the remaining sales proceeds shall be held until a final judgment is entered in *** Case No. 17CV56012 at which time the court will make a determination of the recipient of such funds."

## II.  ANALYSIS

PDXF3 appeals the trial court's September 11, 2018, order. PDXF3 contends that the trial court erred by not granting PDXF3's motion seeking a disbursement of funds, and that the trial court should have ordered distribution of the "surplus funds" from the foreclosure sale to PDXF3. Among other points, it argues that "the thing sought by plaintiff—that the residual funds be held for an indefinite period of time so that, in case the plaintiff succeeds with a second foreclosure suit, there are funds available to make payment—is not a thing the law contemplates or that a court had jurisdiction to order." PDXF3 also contends that the "present case involves the foreclosure of a junior mortgage," and under Orgon law, "[t]hat foreclosure had no effect on the senior mortgages, and it cannot have entitled the holder of the senior mortgages to receive surplus funds." PDXF3 notes, that "at the time of the October 2017 foreclosure sale, the holder of the senior mortgages *** had not yet declared a default, had not filed suit, and no court had said that any sums were due on the senior mortgages."[1]

On appeal, Lincoln Loan argues, among other points, that the judgment of foreclosure required payment

---

[1] PDXF3 also contends that the judgment of foreclosure is "void" to the extent it directed sales proceeds be applied "toward the satisfaction of other secured creditors" because a "default judgment that adds relief not pled [in the complaint] is void to the extent of the unpled default." In light of our analysis herein, we do not address that argument.

to "other secured creditors" prior to payment of any surplus funds to PDXF3, that PDXF3's claim amounts to an impermissible collateral attack on a judgment, and that PDXF3 was required to follow "ORCP 71 procedures to set the judgment aside for error."[2]

A.    *The Trial Court's September 11, 2018, Order*

We first consider whether the trial court was permitted to do what it did in its September 11, 2018, order—*i.e.*, retain the surplus funds from the foreclosure sale pending entry of a final judgment in a separate case, at which time it would "make a determination of the recipient of such funds." Answering that question requires that we determine whether the trial court's order retaining the surplus finds was consistent with the statute mandating distribution of funds from a foreclosure sale. That is a question of law that we review for legal error. *See DiNicola v. Service Employees Int'l Union Local 503*, 281 Or App 706, 715, 383 P3d 924 (2016), *opinion adh'd to as modified on recons*, 283 Or App 914, 389 P3d 421, *rev den*, 361 Or 543 (2017) (noting that "[w]hether a trial court's order is consistent" with the statutes regarding nonprofit corporations "or exceeds its scope presents a question of law that is reviewed for legal error"); *State v. Roberts*, 231 Or App 263, 267, 219 P3d 41 (2009), *rev den*, 347 Or 608 (2010) ("Ordinarily, the interpretation of statutory wording entails a question of law.").

ORS 18.950 governs delivery and distribution of proceeds of foreclosure sales. ORS 18.950(1) provides:

"After the deduction of all sheriff's fees and costs allowed by law that have not been paid by the judgment creditor,

---

[2] Lincoln Loan also contends that the trial court's September 11, 2018, order is not an appealable order under ORS 19.205(3), which allows for appeal of an order "that is made in the action after a general judgment is entered and that affects a substantial right." In Lincoln Loan's view, the trial court's September 11, 2018, order is not subject to appeal under ORS 19.205(3), because "the denial of [PDXF3's] motion for release of the excess funds did not award the excess funds to anyone and, as a result, [PDXF3] cannot complain that it affected a substantial right of theirs." We reject that contention. The trial court's denial of PDXF3's motion requesting that surplus funds from the foreclosure sale be disbursed to PDXF3 exposed PDXF3 to further litigation and additional costs. *See Bhattacharyya v. City of Tigard*, 212 Or App 529, 534, 159 P3d 320 (2007) (order setting aside judgment affected a substantial right because it "exposed petitioner to further litigation, additional costs, and attorney fees").

and deduction of all other amounts required by law, the sheriff shall deliver all net proceeds from an execution sale to the court administrator with the sheriff's return on the writ. *The court shall enter an order of distribution for the proceeds.* An order directing distribution to the judgment creditor may be entered ex parte."

(Emphasis added.)

The meaning of ORS 18.950(1) is a question of statutory construction. In interpreting statutes, "we seek to determine the legislature's intention, by reviewing the statutory text and context, and, if the court concludes that it appears useful to the analysis, the legislative history." *TriMet v. Amalgamated Transit Union Local 757*, 362 Or 484, 493, 412 P3d 162 (2018). We begin with the text, as "there is no more persuasive evidence of the intent of the legislature." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

"Ordinarily, use of the word 'shall' implies that the legislature intended to create an obligation." *Doyle v. City of Medford*, 347 Or 564, 570, 227 P3d 683 (2010); *see also* Office of Legislative Counsel, Bill Drafting Manual 4.4 (18th ed 2018) ("To impose an obligation to act, use 'shall.'"). ORS 18.950(1) then creates an obligation on the trial court to "enter an order of distribution for the proceeds" of a sale after the sheriff "deliver[s] all net proceeds from [the] execution sale to the court administrator with the sheriff's return on the writ," as the sheriff did in this case.

The legislature did not define "distribution" in ORS 18.950 and, therefore, we look to the dictionary for further guidance. *Pride Disposal Co. v. Valet Waste, LLC*, 298 Or App 751, 759, 448 P3d 680, *rev den*, 366 Or 64 (2019). "Distribution" is defined, as particularly relevant here, as the "delivery or conveyance (as of newspapers or goods) to the members of a group" and "the act or process of distributing or the condition of being distributed : APPORTIONMENT, ALLOTMENT <the ~ of money among creditors> <the ~ of the cards to the players>." *Webster's Third New Int'l Dictionary* 660 (unabridged ed 2002); *see State v. Oliver*, 221 Or App 233, 237, 189 P3d 1240, *rev den*, 345 Or 318 (2008) (relevant dictionary definition is the one that "seems most relevant to

the use of the word in the statute"). The dictionary definition of "distribution" includes "apportionment" as a synonymous cross-reference. *Webster's* at 660. "Apportionment," in turn, is defined, as relevant here, as "the division of rights or liabilities among several persons entitled or liable to them in accordance with their respective interests." *Id.* at 105. We thus understand ORS 18.950(1) to create an obligation on the trial court to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and that that order must do so in accordance with the proceeds recipients' respective interests. *See Private Capital Group, LLC v. Harris*, 273 Or App 529, 546, 363 P3d 502 (2015) (noting that in the "ordinary" fact pattern of a foreclosure proceeding, a trial court is required to identify excess proceeds of a foreclosure sale and "distribute them by order in accordance with that designation").

But that is not what the trial court did here. Instead, it entered an order retaining the surplus funds until an unspecified future date, at which time it would "make a determination of the recipient of such funds."

Our conclusion that the trial court was obligated under ORS 18.950(1) to enter an order providing for the delivery or conveyance of the surplus funds, and not to wait to do so until an unspecified future date is supported by statutory context and, in particular, other provisions of the same statutes and related statutes. *See Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004) ("Statutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law ***.").

Turning first to other provisions of the same statute, ORS 18.950(4) provides that:

> "If any proceeds from an execution sale remain after the payment of [certain costs] and satisfaction of the judgment, the court administrator *shall pay the remaining proceeds as directed by the court in the order of distribution.*"

(Emphasis added.)

As noted above, "[o]rdinarily, use of the word 'shall' implies that the legislature intended to create an obligation." *Doyle*, 347 Or at 570. Thus, we understand the legislature

to have intended the trial court administrator to have an obligation to pay the "remaining proceeds" of a foreclosure sale, after satisfaction of the judgment and certain costs, as directed in the "order of distribution" entered by the trial court under ORS 18.950(1). The trial court administrator can only "pay the remaining proceeds," as required by ORS 18.950(4), however, if the order of distribution entered by the trial court under ORS 18.950(1) actually provides for the delivery or conveyance of the proceeds of the foreclosure sale to particular parties, in particular amounts, rather than requiring that the proceeds be retained for the trial court to "make a determination of the recipient of such funds" at a later time.

That is, given the text of ORS 18.950(4), which obligates the trial court administrator "to pay" the remaining proceeds of the sale "as directed by the trial court," and its context in relationship to ORS 18.950(1), it does not appear to us that the legislature intended the trial court to have authority to enter an "order of distribution" under ORS 18.950(1) whereby it directs that surplus funds would be "held" for the trial court to make a determination regarding the recipients of such funds at a future date, as the trial court did in this case.

As further context, we next consider related statutes, specifically ORS 88.030 and ORS 88.050.

The proper parties to a foreclosure suit are governed in part by ORS 88.030. That statute provides that "any person having a prior lien"—*e.g.*, a senior mortgagee—"may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary." ORS 88.030. In contrast, junior lienholders "shall" be "made a defendant in the suit." *Id.*

ORS 88.050 provides requirements for judgments when the trial court has adjudged that a defendant lienholder has a valid lien on the property:

"When it is adjudged that any of the defendants have a lien upon the property, the court shall make a like judgment in relation thereto, and the debt secured thereby, as if such defendant were a plaintiff in the suit. When a

judgment is given foreclosing two or more liens upon the same property or any portion thereof in favor of different persons not united in interest, the judgment shall specify the order, according to their priority, in which the debts secured by such liens shall be satisfied out of the proceeds of the sale of the property."

Read together, ORS 88.030 and ORS 88.050 reflect that the legislature intended that, in a suit to foreclose a junior lien, if adjudication of a senior lien is deemed necessary by the court (or merely desired by the plaintiff), the senior lienholder can be joined as a party and have their rights adjudicated. And, once the senior lienholder's rights are adjudicated, the court is obligated to enter a judgment in the senior lienholder's favor, as if the senior lienholder were a plaintiff in the suit. ORS 88.050 also provides that priority of distribution of the proceeds of a foreclosure sale must be specified in the judgment when two or more liens are foreclosed in favor of parties not united in interest.

In ORS 88.030 and ORS 88.050, the legislature created a specific mechanism to adjudicate the rights of senior lienholders (and the liabilities of debtors) in a foreclosure proceeding where a junior lienholder brings a foreclosure action. That mechanism is for those senior lienholders to be joined in the foreclosure suit prior to entry of the judgment of foreclosure. It is not to wait for a post-judgment foreclosure sale adjudication of whether (and how much) money is owing to particular senior lienholders, as is contemplated by the trial court's order deferring distribution in this case.[3]

In sum, considering the text and context, we conclude that ORS 18.950(1) required the trial court to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and to do so in accordance with

---

[3] We observe that Lincoln Loan was the plaintiff in this case and the holder of the senior mortgages at issue in Case No. 17CV56012, and therefore it is not apparent that ORS 88.050 is directly applicable, other than as helpful context to describe the statutory scheme the legislature enacted for trial courts to adjudicate multiple liens. We observe, however, that Lincoln Loan could have also chosen to foreclose on its senior mortgages in this case if such mortgages were in default, rather than on only its junior-most mortgage, as it did in its complaint in this case. If it had foreclosed on its senior mortgages in this case, its claims would have been adjudicated prior to the judgment of foreclosure in this case.

the proceeds recipients' respective interests.[4] Here, instead, the trial court retained the proceeds of the foreclosure sale pending entry of a final judgment in a separate case, at which time it would "make a determination of the recipient of such funds." That was error because, as defendant contends, it is "not a thing the law contemplates."

B.  *The Trial Court Was Required to Order That the Surplus Funds from the Foreclosure Sale Be Distributed to PDXF3.*

Having concluded that the trial court could not retain the proceeds of the foreclosure sale pending a final judgment in Case No. 17CV56012, but instead was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and to do so in accordance with the proceeds recipients' respective interests, we further conclude that the trial court was required to order that the surplus funds from the foreclosure sale be distributed to PDXF3.

In this case, at the time of the trial court's order denying PDXF3's motion for an order of distribution, only one judgment of foreclosure had been entered with respect to the mortgages encumbering the property at issue in this case. That judgment was the "concluding decision" with respect to Lincoln Loan and Geppert's "rights and liabilities" as to the "request for relief" in Lincoln Loan's January 2017 complaint in this case. *See* ORS 18.005(8) ("'Judgment' means the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document."); ORS 18.005(16) ("'Request for relief' means a claim, a charge in a criminal action or any other request for a determination of the rights and liabilities of one or more parties in an action that a legal authority allows the court to decide by a judgment."). That complaint concerned only the November 1999 promissory note and mortgage and had no bearing on Lincoln Loan's rights with respect to its senior mortgages. *See Giesy v. Aurora State Bank et al.*, 122 Or 1, 6, 255 P 467, *reh'g den*, 122 Or 10, 256 P 763 (1927) (a

---

[4] As noted above, we may also consider legislative history to the extent it is helpful. In this case, the parties have not cited any legislative history regarding ORS 18.950, nor are we aware of any, that has any bearing on our analysis.

foreclosure by a junior mortgagee has no effect on the inter-
est of the senior mortgagee); *see also Restatement (Third)
of Property: Mortgages* § 7.1 (1997) ("A valid foreclosure of
a mortgage terminates all interests in the foreclosed real
estate that are junior to the mortgage being foreclosed and
whose holders are properly joined or notified under appli-
cable law. Foreclosure does not terminate interests in the
foreclosed real estate that are senior to the mortgage being
foreclosed.").

Therefore, the only interests that had been adjudi-
cated at the time the trial court was required to enter an
order of distribution of the proceeds from the foreclosure
sale were those of Lincoln Loan and Geppert, and only
those interests relating to the November 1999 promissory
note and mortgage. Under ORS 18.950(1), the trial court
was required to make an order of distribution in accordance
with those respective interests. Thus, after the judgments
in this case in favor of Lincoln Loan were satisfied, the only
possible recipient of the surplus funds was the successor to
the estate of Geppert, PDXF3.[5]

We are not persuaded by Lincoln Loan's contentions
that PDXF3's arguments constitute an impermissible col-
lateral attack on a judgment, and that PDXF3 was required
to "follow ORCP 71 procedures to set the judgment aside for
error." Lincoln Loan does not explain why the trial court's
obligation under ORS 18.950(1) to enter an order providing
for the delivery or conveyance of the proceeds of the foreclo-
sure sale does not apply in this case notwithstanding lan-
guage regarding "other secured creditors" in the judgment
of foreclosure. *See Private Capital Group*, 273 Or App at 550
("[P]laintiff has not explained why the limitations on credit
bids set out in ORS 18.936 do not apply to all sheriff's sales

---

[5] We note that our conclusion—that, under the circumstances of this case,
the trial court could not hold the surplus foreclosure proceeds for the bene-
fit of potential senior lienholders—is consistent with *Restatement* section 7.4
comment c, which states:

"Senior lienors have no lien claim to a surplus produced by the foreclo-
sure of a junior mortgage. Unlike their junior lien counterparts, their liens
are unaffected by foreclosure and remain on the foreclosed real estate. They
remain free to foreclose on the real estate, and thus there is no justification
for transferring any part of their liens to the junior foreclosure surplus. This
is true even where obligations secured by senior liens are in default."

that occur after that statute's effective date, notwithstanding contrary provisions included in earlier judgments."). And, in any event, as indicated above, at the time the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, no "concluding decision" was entered regarding the interests of any "other secured creditors," such that the trial court would know to whom and in what amount it should distribute the surplus funds.[6]

## III.   CONCLUSION

In sum, we conclude that, under ORS 18.950(1), the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, and to do so in accordance with the proceeds recipients' respective interests. Additionally, given that, at the time that the trial court was required to enter an order providing for the delivery or conveyance of the proceeds of the foreclosure sale, the only interests that had been adjudicated were those of Lincoln Loan and PDXF3 in relation to the mortgage foreclosed upon in this case, we conclude that the trial court was required to order the surplus funds be distributed to PDXF3. We reverse and remand.

Reversed and remanded.

---

[6] On appeal Lincoln Loan also argues that judicial estoppel and equitable estoppel bar PDXF3's claim. Those arguments are in response to PDXF3's argument that the judgment of foreclosure is "void" to the extent that it directed that the sales proceeds be applied "toward satisfaction of other secured creditors" because a "default judgment that adds relief not pled [in the complaint] is void to the extent of the unpled default." As noted above, in light of our analysis herein, we need not address PDXF3's voidness argument. Accordingly, we do not address Lincoln Loan's judicial estoppel and equitable estoppel arguments.

Additionally, on appeal, Lincoln Loan raises various other arguments, including that the result sought by PDXF3 is "unjust" and barred by the doctrine of "unjust enrichment," that PDXF3's claim is "contrary to the public policy against Champerty," and that PDXF3 lacks standing to claim the surplus proceeds from the foreclosure sale. We reject those arguments without further discussion.