Argued and submitted October 12, 2020, affirmed April 21, 2021

LINCOLN LOAN CO.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

THE ESTATE OF
GEORGE W. GEPPERT, DECEASED,
and all Heirs and Devisees,
*Defendants,*

*and*

Zacharias P. ALSTON,
AND ALL OCCUPANTS,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV56012; A172312

489 P3d 1095

Plaintiff appeals from a judgment which held that the two most senior of plaintiff's three remaining mortgages on a single property were barred from foreclosure under the applicable statute of limitations. The trial court concluded that the third mortgage was not time barred, and it was foreclosed. Defendant had previously purchased the property at a sheriff's sale arising from an earlier foreclosure action of a fourth junior mortgage on the same property. *Held*: The trial court properly concluded that defendant's rights in the property, acquired from the sheriff's sale in the previous foreclosure action, attached to the property after the designated period for enforcement of the two most senior mortgages expired under ORS 88.110 and before plaintiff commenced the present foreclosure action. Therefore, the exception to the bar in ORS 88.110 provided in ORS 88.120 did not apply, and enforcement of the two most senior mortgages was barred.

Affirmed.

Christopher J. Marshall, Judge.

Melinda B. Wilde argued the cause for appellant. Also on the briefs was Melinda B. Wilde, LLC.

Scott N. Barbur argued the cause for respondent. Also on the brief was Barbur Law LLC.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and Brewer, Senior Judge.*

BREWER, S. J.

Affirmed.

_____

* Egan, C. J., *vice* Armstrong, P. J.

### BREWER, S.J.

This is an action to foreclose three mortgages on the same real property. Plaintiff Lincoln Loan appeals from a judgment in which the trial court concluded that, before this action was commenced, two of those mortgages expired under ORS 88.110, a statute of limitations on mortgage foreclosures, and that they did not fall within ORS 88.120, which sets out an exception to that statute of limitations.[1] We conclude that the trial court correctly determined that, after the designated period for enforcing the two mortgages expired under ORS 88.110, and before plaintiff commenced this action, defendant Alston's rights attached to the property as the purchaser at a sheriff's sale in a prior action foreclosing yet a fourth, more junior mortgage held by plaintiff, thereby negating the exception in ORS 88.120. We therefore affirm the judgment dismissing the action with respect to the two expired mortgages.

### BACKGROUND

Because doing so will assist in understanding the background of the case, we set out the relevant statutes at the outset. ORS 88.110 provides, in part:

"Except as provided in ORS 88.120, no mortgage upon real property shall be a lien upon such property after the expiration of 10 years from the later of the date of maturity of the mortgage debt, the expiration of the term of the mortgage debt or the date to which the payment thereof has been extended by agreement of record; and after such 10 years the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure."

ORS 88.120, in turn, provides, in part:

"(1)  Foreclosure of a mortgage on real property is not barred by ORS 88.110 when the mortgage is held of record by the State of Oregon or when all the following facts exist at the time the foreclosure suit is commenced:

---

[1] The circuit court held that a third mortgage, dated February 20, 1998, was not time-barred, and in its judgment the court foreclosed that mortgage. Alston does not challenge that ruling on appeal.

"(a)  Any portion of the mortgage debt, or any interest thereon, has been voluntarily paid within the 10 years immediately preceding commencement of the suit.

"(b)  The original mortgagor still owns the mortgaged property.

"(c)  No lien or right of a third person has attached to the property after the expiration of the 10-year period referred to in ORS 88.110."

On the following dates, plaintiff made four mortgage loans to George W. Geppert, generally secured by the same property:[2] the May 5, 1986, first mortgage; the December 9, 1986, second mortgage; the February 20, 1998, third mortgage; and the November 3, 1999, fourth mortgage. All four mortgages were recorded in the Multnomah County Official Records. The promissory notes underlying each of the four mortgages bore interest at 12 percent per annum.

As pertinent here, the May 1986 note was payable on a 120-month (10-year) installment term that expired on May 5, 1996, and the December 1986 note was payable on a 180-month (15-year) installment term that expired on December 9, 2001.[3] Because there was no agreement of record to extend the term of payment for either of the 1986 loans, subject to the possible application of the exception in ORS 88.120, the designated 10-year limitations period under ORS 88.110 for the May 1986 loan would have expired on May 5, 2006, and the limitations period for the December 1986 loan would have expired on December 9, 2011.[4]

Geppert eventually fell in arrears on all four mortgage loan payments, but he continued to make partial payments on each of the loans until he died in 2015. Thereafter, his estate made payments on the May 1986 loan through April 20, 2017, and the December 1986 loan through October 20, 2016.

---

[2]  The December 1986 note was secured by a mortgage on only a portion of the property encumbered by the other mortgages.

[3]  For purposes of ORS 88.110, the expiration of the terms of both 1986 loans was tantamount to their respective maturity dates.

[4]  The 1998 loan had a 20-year term that expired in 2018, so the designated 10-year period under ORS 88.110 for that loan had not commenced nor expired before plaintiff commenced this action in 2017.

On January 10, 2017, plaintiff filed an action against Geppert's estate to foreclose only the most junior (fourth) mortgage in Multnomah County Circuit Court (Case No. 17CV00761). Plaintiff was awarded a foreclosure judgment, and the encumbered real property was sold at a sheriff's sale on October 10, 2017. Before the sale, the sheriff issued a notice of judicial sale that stated, in material part:

> "I will sell at public auction to the highest bidder, subject to redemption, for cash or cashier's check, in hand, made payable to the Multnomah County Sheriff's Office, as provided by law and as directed by the judgment all of the interest that the defendant THE ESTATE OF GEORGE W. GEPPERT had in the real property on November 3, 1999, the date of the mortgage, and also any and all of the interest that the defendants had in said property thereafter[.]"

At the time of the sheriff's sale, the balance owed on the loan secured by the fourth mortgage, including principal, interest at 12 percent per annum, and other charges, was $73,138. Alston was the successful bidder at the sale. He paid a surplus of more than $147,000 over and above the amount owed on the foreclosed mortgage, for a total of $221,000, an amount that, at that time, Alston believed would satisfy all of plaintiff's mortgage loans, including the three more senior mortgages that were not foreclosed in that action.

The Multnomah County sheriff issued a certificate of judicial sale of the foreclosed property on October 18, 2017. Alston then took possession and moved into a residence on the property at the end of October 2017. Alston recorded the certificate of sale in the official records of Multnomah County on November 8, 2017. The certificate provided: "The holder of this certificate will be entitled to a deed from the sheriff, if the property is not redeemed." Consistent with the notice of sale, the certificate also stated that the sheriff had been commanded to sell "all of the interest that defendant THE ESTATE OF GEORGE W. GEPPERT had in the real property on November 3, 1999, the date of the mortgage and also any and all of the interest that the defendants had in said property thereafter[.]"

Because no redemption occurred, Alston ultimately received a sheriff's deed to the property, which he recorded on August 8, 2018.[5]

Before the redemption period expired in the action foreclosing plaintiff's fourth mortgage, on December 27, 2017, plaintiff filed this action to foreclose its remaining three more senior mortgages, naming Alston and Geppert's estate as defendants. In his answer to the complaint, Alston asserted as an affirmative defense that those three mortgages were barred by ORS 88.110.[6] After a bench trial, the circuit court issued an opinion and order ruling that the two 1986 mortgages, but not the 1998 mortgage, were barred by that statute.

In so concluding, the court found, in accordance with the undisputed evidence, that the 10-year term of the May 1986 mortgage expired in May 1996 and that the 15-year term of the December 1986 mortgage expired in December 2001. In applying ORS 88.110, the court concluded that those two mortgages expired in 2006 and 2012, respectively, and were therefore time barred unless the exception in ORS 88.120 applied. As to the latter issue, the court concluded that the first two cumulative requirements of ORS 88.120 (1)(a) and (b) had been satisfied. That is, when this action was commenced, title to the property was still in the name of George Geppert, and Geppert and his estate had made payments to plaintiff on each of the mortgage loans within the preceding 10 years. However, insofar as the third cumulative requirement in section (1)(c) was concerned, the court concluded that Alston acquired rights that attached to the property under the sheriff's certificate of sale that

---

[5] On March 20, 2018—before its statutory redemption rights expired—Geppert's estate assigned its interest in the property to PDXF3 LLC, which did not exercise the redemption rights. Instead, PDXF3 LLC waited for the statutory redemption period to expire, then intervened in the action that foreclosed plaintiff's fourth mortgage and, over the objections of plaintiff and Alston, filed a motion to recover the surplus sale proceeds that Alston paid over and above the outstanding debt secured by the fourth mortgage. On appeal in that action, this court held that PDXF3 LLC, as Geppert's successor in interest, was entitled to the surplus proceeds of sale. *Lincoln Loan Co. v. Estate of George Geppert*, 307 Or App 213, 477 P3d 7 (2020).

[6] Geppert's estate did not appear, and an order of default was entered against it.

was recorded on November 8, 2017, before plaintiff filed this action on December 27, 2017, and more than 10 years after the terms of both 1986 mortgages expired. On that ground, the court concluded that the exception in ORS 88.120 did not apply, and that ORS 88.110 barred the foreclosure of the 1986 mortgages. Plaintiff appeals the ensuing judgment.

## ANALYSIS

In a single assignment of error, plaintiff makes two separate arguments. First, plaintiff argues that we "should refuse to extend the protection of ORS 88.110 to Alston who purchased the original mortgagor's interest as it existed on November 3, 1999." More specifically, plaintiff argues:

> "There is no question that defendant obtained a right on October 10, 2017. However, the right the defendant obtained had attached to the real property on November 3, 1999, through the Estate of George Geppert, and was not a new right or interest that attached after the ten-year period described in ORS 88.110. Because the right defendant obtained on October 10, 2017, attached to the real property on November 3, 1999, it attached before the expiration of the 10-year period referred to in ORS 88.110 for purposes of satisfying the third requirement for exemption from ORS 88.110 found at ORS 88.120(1)(c)."

Second, plaintiff argues that Alston's right in the foreclosed property under the recorded sheriff's certificate of sale constituted an "[i]nchoate and defeasible interest [that] is not an interest or right under ORS 88.120(1)(c)." Plaintiff elaborates:

> "[T]he rights of [Alston], if the court finds them to have arisen on or after October 10, 2017, rather than on November 3, 1999, did not attach to the real property within the meaning of ORS 88.120(1)(c) until the sheriff's deed vested title irrevocably in defendant on or around August 8, 2018."

We address those arguments in the order made. Because both arguments depend on uncontroverted facts in the record, we review them for legal error. ORS 19.415.

The fault in plaintiff's first argument lies in an incomplete description of the record, beginning with the import of the date referred to in the sheriff's notice of judicial

sale and the subsequent certificate of sale in the first fore-closure action. November 3, 1999, was the date of the fourth mortgage. The reference to that date in the notice of sale and the certificate of sale indicated that the foreclosure of the fourth mortgage was subject to whatever encumbrances Geppert (or any predecessor in interest of his for that matter) had granted or suffered against the property before then. *See Giesy v. Aurora State Bank et al.*, 122 Or 1, 6, 255 P 467, *reh'g den*, 122 Or 1 (1927) (holding that foreclosure by junior mortgagee has no effect on interest of the senior mortgagee); *see also Lincoln Loan Co. v. Estate of George Geppert*, 307 Or App 213, 223-24, 477 P3d 7 (2020) (citing *Giesy* for that proposition).

Plaintiff's first argument hinges on the premise that, even though Alston acquired rights in the property at the sheriff's sale in 2017, the rights that he acquired were the rights that Geppert had some 18 years earlier, on the date of the fourth mortgage. However, that premise is mistaken. By their express terms, both the notice of sale and the certificate of sale were broader than plaintiff's characterization of them. In combination, those documents provided that any interest that Geppert either had on November 3, 1999, *or that he acquired thereafter*, was to be sold and, in fact, was sold. Those references were to a continuing period that did not end until the date of the sheriff's sale, which was after the designated 10-year period under ORS 88.110 had expired with respect to both of the 1986 mortgages.[7] Thus, unless the exception in ORS 88.120 applied, plaintiff's 1986 mortgages were barred under ORS 88.110 when the sheriff's sale was held, and, if the rights that Alston acquired under the certificate of sale attached to the property before plaintiff commenced this action, those rights were not subject to the liens of the 1986 mortgages. Accordingly, we reject plaintiff's first argument.

As a consequence, the dispositive question is whether the exception in ORS 88.120(1) preserved the liens

---

[7] It comes as no surprise that, in foreclosing a mortgage, a lender would seek a sale not only of the mortgagor's interest in the property as of the date of the mortgage, but also of the mortgagor's after-acquired interests, if any, so as to take advantage (as only one example) of the discharge of clouds on the mortgagor's title that might have occurred in the intervening period.

of plaintiff's 1986 mortgages which, in turn, depends on when Alston's rights in the foreclosed property attached for purposes of ORS 88.120(1)(c). Which brings us to plaintiff's second argument. In framing that argument, plaintiff acknowledges that Alston acquired a "right" in the foreclosed property when he received the sheriff's certificate of sale, but it poses the question of when that right attached to the property. There are four possible answers to that question: (1) November 3, 1999, the date of the fourth mortgage, which we already have concluded is incorrect; (2) October 18, 2017, when the sheriff issued the certificate of sale; (3) November 8, 2017, when Alston recorded the certificate of sale in the Multnomah County official records; or (4) August 8, 2018, when Alston recorded the sheriff's deed after the redemption period expired. If the correct answer is either the second or third, plaintiff cannot prevail under ORS 88.120(1)(c), because both dates preceded December 27, 2017, when plaintiff commenced this action to foreclose the 1986 mortgages. If, on the other hand, Alston's rights attached to the property only when the sheriff's deed was recorded in August 2018, plaintiff would prevail because it already had commenced this action by then. Because the certificate of sale was recorded before plaintiff commenced this action, the question of who prevails reduces to whether, for purposes of ORS 88.120(1)(c), Alston's rights "attached" to the property no later than when the certificate of sale was recorded in November 2017, as opposed to when the sheriff's deed was recorded in August 2018?

To answer that question, we apply our familiar interpretive methodology, examining the text, context, and relevant legislative history of ORS 88.110 and ORS 88.120, as well as any applicable maxims of statutory construction, to determine the legislature's intent in enacting those statutes. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Although plaintiff acknowledges that Alston is a "third person" who acquired a "right" in the Geppert property as a result of his purchase at the sheriff's sale, the parties disagree about the nature of that right in the context of the phrase "right *** has attached to the property" in ORS 88.120(1)(c). Accordingly, it is necessary to consider the

meanings of "right" and the root word "attach" in the setting of that phrase.

The original versions of ORS 88.110 and ORS 88.120 were enacted in 1913 and 1917, respectively, and they have not been substantively amended in the ensuing years. *Security State Bank v. Luebke*, 303 Or 418, 422-23 & n 1, 737 P2d 586 (1987).[8] The legislature did not define either "right" or "attach" in ORS 88.120(1)(c) or any related statute. However, both words are terms of legal art with well-defined meanings. *Ann Sacks Tile and Stone, Inc. v. Dept. of Rev.*, 352 Or 380, 386, 287 P3d 1062 (2012) ("When the words in a statute have a well-defined legal meaning, we use that meaning in interpreting the statute.").

As it pertains to real property, a "right"—generally speaking—is synonymous with an "interest," and it often refers to an interest that amounts to something less than full title in real property. "[I]n its application to lands or things real, the word 'interest' was defined as 'a right to have the advantage accruing from anything; any right in the nature of property, but less than title; a partial or undivided right; a title to share.'" *Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 701, 375 P3d 463 (2016) (quoting *Black's Law Dictionary* 950 (4th ed 1968)); *see also State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015) (same).

As it pertains to real property, the word "attach," in turn, generally refers to the binding of a legally recognized claim, lien, charge, or liability as an encumbrance on the property. *See, e.g.*, *Vukanovich v. Kine*, 251 Or App 807, 814, 285 P3d 733 (2012), *rev den*, 353 Or 203 (2013) (holding that a "notice of *lis pendens* is an encumbrance * * * because it is a claim or charge that attaches to and binds real property"); ORS 205.450(1) (defining "encumbrance" as "a claim, lien, charge or liability attached to and binding property"); *Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 155, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327 (1994) (quoting with approval definition of

---

[8] We have found no contemporaneous legislative history pertaining to the enactment of either statute, and the parties have not referred us to any such history. However, as will be seen, in *Luebke* the Supreme Court discussed the apparent purposes of those statutes. We examine that decision below.

"encumbrance" in *Black's Law Dictionary* 527 (6th ed 1990) as a "claim, lien, charge, or liability attached to and binding real property; *e.g.* a mortgage; judgment lien; mechanics' lien; lease; security interest; easement or right of way; accrued and unpaid taxes").

With those legal meanings of "right" and "attach" in mind, the statutory framework pertaining to judicial foreclosure of mortgages in which ORS 88.110 and ORS 88.120 function provides context for our analysis. We now examine that framework, as well as pertinent judicial decisions interpreting its provisions.

ORS 88.106 provides:

"A judgment of foreclosure shall order the mortgaged property sold. Property sold on execution issued upon a judgment may be redeemed in like manner and with like effect as property sold at an execution sale pursuant to ORS 18.860 to 18.993, and not otherwise. A sheriff's deed for property sold on execution issued upon a judgment shall have the same force and effect as a sheriff's deed issued for property sold at an execution sale pursuant to ORS 18.860 to 18.993."

Subject to exceptions that do not apply in this case, to prevent the issuance of a sheriff's deed to Alston in the first foreclosure action, Geppert's estate and its assignee were required to redeem the property within 180 days after the date of the sale. ORS 18.964(1). Because the property was not timely redeemed, upon paying the applicable fee, Alston was entitled to, and received, a sheriff's deed. ORS 18.985.

However, as plaintiff correctly observes, Geppert's estate retained legal title to the property during the redemption period. In that regard, ORS 18.952(1) provides:

"The title of a judgment debtor or mortgagor to real property that is subject to redemption under ORS 18.960 to 18.985 is not transferred by the sale of the property at an execution sale. If a judgment debtor or mortgagor, or a successor in interest to a judgment debtor or mortgagor, redeems property sold at an execution sale, the right to possession of the property is restored subject to all liens of record, whether arising before, on or after the sale, as though the sale had never occurred."

In interpreting a similar statute, *former* ORS 23.530(1) (2001), *repealed by* Or Laws 2005, chapter 542, section 73,[9] the Supreme Court held:

> "We have previously held, and again hold, that the mortgagor's or judgment debtor's statutory right of redemption includes the 'legal title.' Thus, following the foreclosure sale and during the time for redemption, 'legal title' is held by the mortgagor. Even though the purchaser at a sheriff's sale receives a 'certificate of the sale' from the sheriff, no conveyance to the purchaser has yet been made, and, in most cases, is not made until the time for redemption has expired. The purchaser is not entitled to an 'absolute' title until the deed of conveyance. Until the sale is complete the purchaser at the sale holds 'a mere inchoate and defeasible right to a conveyance of the legal title,' subject to the right of possible redemptioners to redeem. 'Legal title' remains with the mortgagor/judgment debtor until the foreclosure sale is complete."

*Franklin v. Spencer,* 309 Or 476, 483-84, 789 P2d 643 (1990) (internal citations omitted).

Relying on *Franklin*, plaintiff argues that the rights of a purchaser of foreclosed property under a sheriff's certificate of sale do not attach to the property unless and until a sheriff's deed issues after the expiration of the statutory redemption period. However, *Franklin* does not support that

---

[9] *Former* ORS 23.530(1) (2001) provided that a right to redeem from a mortgage foreclosure sale existed in favor of:

> "The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired, by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the whole or any part of the property separately sold; provided, that in the event redemption is made by anyone acquiring the legal title after attachment, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment."

That statute was renumbered as ORS 18.568 by Legislative Counsel in 2003, and it was repealed by Or Laws 2005, chapter 542, section 73. ORS 18.963(1)(b), the statute that currently provides redemption rights for mortgagors, does not describe the nature of a mortgagor's interest in foreclosed property during the statutory redemption period. That subject currently is addressed by ORS 18.952, which we discuss below. Because the two statutes, while not identically worded, are of similar import insofar as that issue is concerned, the Supreme Court's construction of *former* ORS 23.530(1) remains relevant to our analysis of the nature of that interest.

proposition. The issue in that case was "[i]f a mortgagor, after foreclosure and sale, but during the time within which the mortgagor can redeem, assigns the right to redeem and the assignee redeems, are liens arising from unsatisfied judgments against the mortgagor/assignor, judgments that existed before the foreclosure decree and sale, reinstated as to the redeemed property?" *Id.* at 478. In holding that such liens are reinstated in those circumstances, the court did not address, either expressly or implicitly, the issue before us here.

Plaintiff's focus on the fact that Alston did not acquire legal title to the Geppert property by reason of the sheriff's certificate of sale places too narrow a meaning on the phrase "right *** attached to the property" in ORS 88.120(1)(c). Many "rights" that "attach" to real property, including mortgages, fall short of legal title. Yet, it is beyond question that, when recorded, such rights "attach" to subject property. *See Zaninetta v. McCulloch*, 130 Or 396, 398-99, 280 P 328 (1929) (holding, under predecessor to ORS 88.120, that second mortgage acquired subsequent to expiration of 10-year limitation was superior to barred first mortgage, notwithstanding that original mortgagor still owned premises).

As noted, plaintiff remonstrates that, until he received the sheriff's deed, Alston's rights in the property were "inchoate and defeasible." Assuming without deciding that those labels are apt in this setting, as we now explain, Alston had both immediately effective and contingent rights that attached to the foreclosed property under the recorded certificate of sheriff's sale.

A purchaser's immediately effective rights include the right to possession of foreclosed property and the right to receive rent under an unexpired lease of the property. *See* ORS 18.946.[10] Also among those immediate rights, once a

---

[10] ORS 18.946 provides:

"(1) Subject to subsection (2) of this section, the purchaser of real property at an execution sale is entitled to possession of the property from the date of sale until a redemption of the property, if any. Subject to subsection (2) of this section, the redemptioner of real property is entitled to possession of the property from the date the payment required by ORS 18.966 or 18.967 is made until another redemption, if any.

sheriff's certificate of sale is recorded, the purchaser's priority over the interests of a subsequent purchaser is perfected. *See* ORS 18.942(2) (providing that a purchaser at an execution sale "shall record in the County Clerk Lien Record the sheriff's certificate of sale provided to the purchaser under the provisions of this section"); *see also* ORS 93.530 (providing that "[a]ll assignments of sheriffs' certificates of sale of real property on execution or mortgage foreclosure shall be executed and acknowledged and recorded in the same manner as deeds of real property"); ORS 93.640(2) (providing that assignment of sheriffs' certificate of sale of real property on mortgage foreclosure "which is not recorded in the records of deeds in the county where the land is situated within five days after its execution is void as against any subsequent purchaser in good faith and for a valuable consideration of such certificate of sale, or the real property covered thereby, or any portion thereof, whose assignment is first recorded").

In addition,

"[i]f the real property sold at an execution sale is farmland, the certificate holder has a *lien* on the first crops sown or grown after the sale and for all sums reasonably expended by the certificate holder in plowing, cultivating or seeding the property. The lien of the certificate holder is superior to all other liens except the liens provided by law for payment of wages for work in cultivating the land or harvesting the crops grown on the property. If the real property is not farmland, the certificate holder has a *lien* on the profits accruing from the property during the period that the certificate holder held the land for sums necessarily expended by the certificate holder to prevent waste."

ORS 18.968(2) (emphasis added). The liens provided by that statute, which also inure to purchasers of foreclosed property at a sheriff's sale pursuant to ORS 88.106, necessarily

---

"(2) If property sold on execution or redeemed is in the possession of a tenant who holds the property at the time of the sale under an unexpired lease that has a priority that is inferior to the claim of the judgment creditor, the lessee has the right to remain in possession of the property until expiration of the period allowed for redemption if the lessee makes the lease payments to the purchaser or redemptioner, or pays to the purchaser or redemptioner a monthly payment equal to the value of the use and occupancy of the property, whichever amount is greater."

attach to the property in the sense contemplated by the legal meaning of that term when a certificate of sheriff's sale is recorded.

Insofar as a purchaser's contingent rights in foreclosed property are concerned, it is true that, if the mortgagor or its successor in interest redeems the property, their right to possession of the property would be restored "subject to all liens of record, whether arising before, on or after the sale, as though the sale had never occurred." ORS 18.952(1). To redeem, though, a claimant must reimburse the purchaser both for the purchase price paid at the sheriff's sale, as well as for other charges that the purchaser incurred with respect to the property after the sale. *See* ORS 18.966.[11] Stated another way, the purchaser either has the right to a sheriff's deed if no redemption occurs or the right to be made whole with respect to the purchase price and his or her expenses if a redemption does occur. To protect those rights, when a notice of redemption is filed, the purchaser is entitled to object if he or she asserts that the claimant is not eligible to redeem, ORS 18.971, or that the proposed redemption amount is insufficient under ORS 18.966. ORS 18.972(1)(b). If the claimant is ineligible or fails to timely make the required payment, the redemption notice "is of no effect," ORS 18.975(1), "the redemption is void," ORS 18.978(4), and the purchaser is entitled to a sheriff's deed. ORS 18.985.

---

[11] ORS 18.966 provides:

"Subject to ORS 18.968, a claimant may redeem property from the purchaser at an execution sale by paying to the sheriff:

"(1) The amount paid by the purchaser at the execution sale, with interest at the rate of nine percent per annum from the date of sale;

"(2) The amount of any taxes paid by the purchaser on the property, with interest at the rate of nine percent per annum from the date of payment;

"(3) Any amounts necessarily expended by the purchaser to prevent waste, with interest at the rate of nine percent per annum from the date of payment;

"(4) Any amounts paid by the purchaser on liens superior to the interest of the purchaser, with interest at the rate of nine percent per annum from the date of payment; and

"(5) Any assessments paid by the purchaser to a homeowners association under ORS 94.550 to 94.783, or to an association of unit owners under ORS chapter 100, with interest at the rate of nine percent per annum from the date of payment."

Given their comprehensive and concrete nature, we conclude that, although Alston's right to acquire title to the foreclosed property was contingent on there being no successful redemption, his collective array of rights under the certificate of sale nonetheless attached to the foreclosed property when the certificate of sale was recorded. Analogously, a construction lien, although described as "inchoate and defeasible" until a claim is filed, has been held to attach to property at the time of commencement of the structure. *Henry v. Hand*, 36 Or 492, 498, 59 P 330 (1899).[12] Of similar effect are the so-called inchoate and defeasible rights that attach to property by virtue of a *lis pendens*. In *Vukanovich*, we held:

> "[A] plaintiff's recording of a notice of *lis pendens* has a concrete effect when statutory requirements are met and the plaintiff ultimately prevails in litigation regarding his or her claim to real property: it gives the plaintiff's interest in the property priority over subsequently asserted interests. In short, the notice is a 'claim' or 'charge' that *attaches to property*. Moreover, the notice of *lis pendens* 'binds' the property because persons who attempt to record an interest in the property after the plaintiff's notice is recorded will be bound by the judgment in the underlying litigation."

251 Or App at 813-14 (emphasis added).

Similarly, here, the issuance of the sheriff's certificate of sale to Alston following the judgment foreclosing plaintiff's fourth mortgage imported the rights we have described, and once recorded, Alston's rights bound and thus attached to the foreclosed property, so that intervening interests were subject to those rights. *See* ORS 93.640(2) (so providing with respect to subsequent purchasers); *see also* Abraham Clark Freeman, 3 *Treatise on the Law of Executions in Civil Cases, and of Proceedings in Aid and Restraint Thereof* § 323, 1891 (3d ed 1900) (stating that

---

[12] The holding in *Henry* has withstood the test of time. *See SERA Architects, Inc. v. Klahowya Condominium, LLC*, 253 Or App 348, 361, 290 P3d 881 (2012), *rev den*, 353 Or 533 (2013) (citing *Henry* with approval for the principle that "'the lien shall attach at the time of the commencement of the structure'").

purchaser at sheriff's sale, having paid purchase price, is invested with an interest in foreclosed property).[13]

Plaintiff cites several Supreme Court decisions in arguing that Alston's rights under the certificate of sale did not attach to the foreclosed property until the sheriff's deed was issued and recorded. However, none of those decisions are at odds with our conclusion. For example, *Versteeg v. Pratt*, 144 Or 485, 25 P2d 387 (1933), involved a sale by a son to his father of land that was encumbered by a mortgage that was in default. *Id.* at 485. The mortgagee had commenced a foreclosure proceeding while the son still owned the property. *Id.* Relying on an earlier version of ORS 88.120(1)(c), the father attempted to quiet title to the property in his favor after execution had issued on the foreclosure judgment. *Id.* at 486. The Supreme Court made short work of that effort:

> "Under the facts as pleaded and proven in the case at bar, plaintiff's grantor, the original mortgagor, was still the owner of the mortgaged property at the time defendant brought the foreclosure suit and had paid a part of the interest accruing under the mortgage within ten years prior thereto, and no lien or right of plaintiff or of any third party had attached to the mortgaged property after the expiration of the ten-year period and before she commenced her suit."

*Id.* at 487. This case is distinguishable from *Versteeg* in that plaintiff commenced this foreclosure action on its senior mortgages *after* Alston purchased the property and recorded the certificate of sale. Moreover, here, unlike with respect to the questionable circumstances in *Versteeg*, there was no evidence that, in purchasing the property at the sheriff's sale, Alston colluded in any way with Geppert's estate or anyone else to deprive plaintiff of its senior mortgages.

Another case on which plaintiff relies, *Day v. Celoria et ux. et al.*, 116 Or 250, 241 P 58 (1925), is similarly

---

[13] Although the statutory schemes governing foreclosure sales vary in substance and process from state to state, this appears to be a generally endorsed view in other jurisdictions as well. *See, e.g.*, *Wasatch Oil & Gas, L.L.C. v. Reott*, 207 UT App 223, ¶ 23, 163 P3d 713, 719-20 (Utah Ct App 2007); *Powers v. Pense*, 20 Wyo 327, 123 P 925, 929-30 (1912).

distinguishable. In that case, like *Versteeg*, the mortgagee's rival claimant acquired an interest in the mortgaged property within 10 years after the maturity of the mortgage. *Id*. In fact, when he acquired title, the grantee even expressly assumed the mortgage that he later claimed was time-barred. *Id*. at 250-51. In a very brief opinion, the Supreme Court held:

> "When Celoria purchased the property there was a subsisting valid mortgage lien on the property. By the terms of the complaint he 'assumed, promised and agreed to pay plaintiff's mortgage as a part of the consideration of such sale, transfer and conveyance.' Only six months and eighteen days after making this promise to pay said mortgage this suit was instituted to foreclose the mortgage. This suit was begun in a little more than three years after the last payment of interest. Neither the note nor the mortgage was barred by the statute."

*Id*. at 252.

*Luebke* turned on analogous facts and is distinguishable for the same reason. In that case, the plaintiff initiated a foreclosure action more than 10 years after its secured debt had matured. In the meantime, the property had been sold several times in a stacked set of land sale contracts, but the last sale—to the mortgagee's rival claimant—occurred before the 10-year period expired. *Luebke*, 303 Or at 420. In holding that the plaintiff's mortgage was not barred under ORS 88.110, the Supreme Court stated:

> "We adhere to our decisions in *Day* and [*Force v. Heusner*, 142 Or 280, 283, 18 P2d 583 (1933)]. No person whose interest arises before the 10-year period expires can invoke ORS 88.110 if requirements (1) and (2) of ORS 88.120 are also made out."

*Luebke*, 303 Or at 428. In short, unlike in this case, the interest of the mortgagee's rival claimant arose before the 10-year period in ORS 88.110 expired. Accordingly, *Luebke* does not control the outcome here.

Plaintiff correctly observes that in *Luebke*, the court held that the purpose of ORS 88.120 was to "protect mortgagees who may have been 'lulled' into a false sense of

security by receiving continuing mortgage payments and to limit the protection of ORS 88.110 to a third person whose lien or right attached subsequent [to] 10 years after the maturity date of the prior mortgage lien." 303 Or at 425-26.[14] What plaintiff overlooks, though, is that when it foreclosed its fourth mortgage, but not the 1986 mortgages that had matured more than 10 years earlier, plaintiff was not lulled by any false sense of security with respect to Geppert's voluntary payments on the 1986 mortgages. It is only because of plaintiff's own voluntary decision to refrain from foreclosing its more senior mortgage rights that it now faces the challenge of Alston's intervening rights in the property.

Finally, plaintiff emphasizes evidence in the record that, in paying $221,000 for the property at the sheriff's sale, Alston believed that plaintiff's senior mortgages would be paid along with the mortgage being foreclosed. According to plaintiff, that evidence is fatal to Alston's position because ORS 88.120 was intended to "remove the conclusive presumption imposed by [ORS 88.110] when payments had been made within ten years of suit, *saving it only for the liens or rights acquired by third parties justifiably relying on the presumption*." (Emphasis added.)[15]

The above statement is from the 1933 law review note, as quoted in *Luebke*, 303 Or at 426. In quoting that statement, the court equated it with the express purpose of ORS 88.120(1)(c) to "limit the protection of ORS 88.110 to a third person whose lien or right attached subsequent [to] 10 years after the maturity date of the prior mortgage lien[.]" *Id*. Viewed in context, it is apparent that the court did not

---

[14] In *Luebke*, the court quoted extensively from a 1933 law review note that undertook to describe the purposes of earlier codifications of ORS 88.110 and ORS 88.120. 303 Or at 427-28 (quoting Donald K. Moe, Note, *Mortgages-Statute of Limitations*, 12 Or L Rev 343, 344 (1933)). Whether those purposes were discerned based on legislative history is unclear from the excerpts that the court quoted. Regardless of their provenance, though, they are not at odds with our analysis.

[15] Plaintiff cites *Force v. Heusner*, 142 Or 280, 283, 18 P2d 583 (1933), for that proposition, but the quoted language does not appear in the opinion in that case. *Force* involved a priority dispute between mortgagees. The court held that the senior mortgagee was entitled to prevail because the lien of the junior mortgage attached to the property *before* the expiration of the 10-year period applicable to the senior mortgage under ORS 88.110. *Force*, 142 Or at 283.

mean to suggest that ORS 88.120(1)(c) includes an actual "justifiable reliance" proof requirement. The plain textual meaning of ORS 88.120(1)(c) indicates that the right of any third person that attaches to mortgaged property "after the expiration of the 10-year period referred to in ORS 88.110" bars foreclosure of the mortgage. On the face of the statute, proof that the third person actually relied on the unenforceability of the mortgage lien in acquiring his or her right is immaterial to whether the right has attached to the property, and no court has ever suggested otherwise.

For the reasons explained, the circuit court did not err in concluding that Alston's rights under the recorded sheriff's certificate of sale attached to the foreclosed property before plaintiff commenced this action. The foreclosure of plaintiff's two 1986 mortgages therefore was barred under ORS 88.110 because the requirement in ORS 88.120(1)(c) was not satisfied.

Affirmed.